Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
09/03/2021 08:10 AM CDT

State of Nebraska, appellee, v.
Jean Childs, appellant.
___ N.W.2d ___

Filed June 11, 2021.    No. S-20-024.

1. **Criminal Law: Directed Verdict: Appeal and Error.** In an appellate court's consideration of a criminal defendant's motion for a directed verdict, the State is entitled to have all its relevant evidence accepted as true, every controverted fact resolved in its favor, and every beneficial inference reasonably deducible from the evidence.

2. **Rules of Evidence: Appeal and Error.** When the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, an appellate court reviews the admissibility of evidence for an abuse of discretion.

3. **Appeal and Error.** An appellate court may find plain error on appeal when an error unasserted or uncomplained of at trial, but plainly evident from the record, prejudicially affects a litigant's substantial right and, if uncorrected, would result in damage to the integrity, reputation, and fairness of the judicial process.

4. ____. Generally, an appellate court will find plain error only when a miscarriage of justice would otherwise occur.

5. **Criminal Law: Directed Verdict.** In a criminal case, the court can direct a verdict only when (1) there is a complete failure of evidence to establish an essential element of the crime charged or (2) evidence is so doubtful in character and lacking in probative value that a finding of guilt based on such evidence cannot be sustained.

6. **Directed Verdict: Evidence: Appeal and Error.** When a motion for a directed verdict made at the close of all the evidence is overruled by the trial court, appellate review is controlled by the rule that a directed verdict is proper only where reasonable minds cannot differ and can draw but one conclusion from the evidence, and the issues should be decided as a matter of law.

7. **Perjury: Proof.** There are three elements necessary to prove perjury: (1) the defendant makes a false statement under oath, (2) the statement is material, and (3) the defendant did not believe the statement to be true.

8. \_\_\_\_: \_\_\_\_. Perjury must be proved by at least two witnesses or by a single witness, together with material and established corroborative facts sufficient to amount to the testimony of another witness.

9. **Appeal and Error.** Plain error is not a vehicle that should be routinely used to save an issue for appeal where a proper objection should have been, but was not, made at trial.

10. **Trial: Prosecuting Attorneys: Appeal and Error.** When assessing a claim of alleged prosecutorial misconduct, an appellate court first determines whether the prosecutor's acts constituted misconduct.

11. **Trial: Prosecuting Attorneys: Words and Phrases.** Prosecutorial misconduct encompasses conduct that violates legal or ethical standards for various contexts because the conduct will or may undermine a defendant's right to a fair trial.

12. **Trial: Prosecuting Attorneys: Juries.** Prosecutors are charged with the duty to conduct criminal trials in such a manner that the accused may have a fair and impartial trial, and prosecutors are not to inflame the prejudices or excite the passions of the jury against the accused.

13. \_\_\_\_: \_\_\_\_: \_\_\_\_. A prosecutor's conduct that does not mislead and unduly influence the jury does not constitute misconduct.

14. **Trial: Evidence: Appeal and Error.** An objection must be specifically stated, and on appeal, a defendant may not assert a different ground for his or her objection to the admission of evidence than was offered to the trier of fact.

15. **Records: Appeal and Error.** An appellate court often declines to scour the record on appeal in search of facts that might support a claim if not cited by a party in its brief, even if the failure to do so may result in the appellate court's overlooking a fact or otherwise treating a matter under review as if it does not exist.

Appeal from the District Court for Kimball County: Derek C. Weimer, Judge. Affirmed.

Jerald L. Ostdiek, of Douglas, Kelly, Ostdiek, Snyder, Ossian, Vogl & Lookabill, P.C., for appellant.

Douglas J. Peterson, Attorney General, and Jordan Osborne for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Per Curiam.

Jean Childs appeals her conviction for perjury based upon testimony she gave at her husband's trial on a misdemeanor charge. On appeal, Jean argues the district court erred in receiving the transcript from her husband's trial over her hearsay objections and erred in overruling her motion for a directed verdict. She also argues it was plain error for the trial court to allow the prosecutor to comment on her husband's conviction and to allow the jury to consider the transcript of her husband's trial without redacting a comment made by the judge. Finding neither error nor plain error, we affirm.

## I. BACKGROUND

### 1. Kenneth's Trial

On February 16, 2016, the village of Dix, Nebraska (Village), received a complaint that a trench had been dug across a street adjacent to the home of Jean and her husband, Kenneth Childs. Because the Childses' vehicle was parked over the trench, the Village contacted Kimball County Deputy Sheriff Marla Knigge for assistance with moving the vehicle so the Village could fill the trench.

On February 18, 2016, Knigge met with Kenneth at the Childses' home. Kenneth told Knigge that he dug the trench to drain the water away from their property. When Knigge informed Kenneth that the Village wanted to fill in the trench, Kenneth stated that if that happened, he would dig the trench again if he needed to drain water away from their property in the future.

Kimball County charged Kenneth with injury to a public road, in violation of Neb. Rev. Stat. § 39-301 (Reissue 2016), a Class V misdemeanor. In August 2016, the county court judge held a bench trial, where Kenneth chose to represent himself. At trial, the State called four witnesses.

Mark Miller, the street commissioner for the Village, testified about receiving a complaint from the Childses' neighbor that a trench had been dug across the public road adjacent to the Childses' house.

Sharon McKinney, the village clerk, testified that she received a report about the trench and that on or about February 16, 2016, she drove to the location and took a photograph. The photograph was received as exhibit 1. McKinney described the trench as "fairly large" and said it "made a racket" when she drove across it. She indicated that the trench went from the edge of the Childses' property to the edge of the neighbor's property across the road. McKinney testified that Kenneth did not have permission to dig the trench and that he had previously been asked not to do so.

Knigge testified about her February 18, 2016, visit with Kenneth. Knigge testified that she made contact with Kenneth on February 18 to ask him to move his vehicle so the Village could fill in the trench and that exhibit 1 depicted the trench as it appeared on February 18. She testified that Kenneth told her he dug the trench to drain water away from their property and that if the trench got filled in, he would dig it again.

Linda Williams, the office administrator for the Kimball County sheriff's office, was also present during Knigge's conversation with Kenneth, and she corroborated Knigge's testimony. Williams further testified that when she and Knigge made contact with Kenneth in February 2016, he admitted to digging the trench because water would pool on their property and he wanted it to drain off.

Kenneth called Jean as the only defense witness. On direct examination, Kenneth showed Jean exhibit 1, the photograph of the trench taken by McKinney on February 16, 2016. When asked, under oath, whether Jean saw "any digging at all [in the photograph]," she testified, "No. I see a difference between the pavement and the dirt, and there's always a difference between the pavement and the dirt no matter where you live at." Then,

when Kenneth asked Jean whether the trench depicted in the photograph was the same trench that was at issue in the case, Jean stated that "[t]here's no trench there." Kenneth also asked Jean questions regarding Knigge and Williams' visit on February 18, and the following exchange took place:

Q When [Knigge and Williams] were down there, was there a trench?

A No.

Q There was no trench? There was no ditch, right?

A Right.

Kenneth asked Jean whether they had ever dug a ditch or trench, to which Jean replied that they had never dug a trench.

The court ultimately found Kenneth guilty of injuring or obstructing a public road by plowing or digging a ditch or other opening thereon, describing the evidence as "overwhelming." The court then stated, on the record, "I am also going to direct the county attorney's office to contact the Nebraska State Patrol, because I believe perjury was committed by the defense in this case today and, also, aiding and abetting perjury by you in your questioning and the statements that you've made." The court then proceeded to sentencing and ordered Kenneth to pay a $100 fine.

## 2. Jean's Perjury Trial

After the Nebraska State Patrol completed its investigation, a special prosecutor for Kimball County charged Jean with perjury in violation of Neb. Rev. Stat. § 28-915 (Reissue 2016), a Class III felony, based on her testimony during Kenneth's trial. The day before Jean's trial was scheduled to begin, she filed a motion in limine. As relevant to the issues on appeal, Jean moved to exclude "[t]he portions of the transcript of [Kenneth's trial] containing the testimony of Deputy Marla Knigge, Mark Miller, Sharon McKinney, and Linda Williams."

Jean's motion in limine was taken up on the morning of her trial, outside the presence of the jury. Jean's counsel acknowledged a prior stipulation that the transcript from Kenneth's trial

could be admitted, but asked the court to redact, as inadmissible hearsay, the testimony of all witnesses other than Jean. Counsel also described the challenged testimony as "all the portions that are not [Jean's] testimony." The State objected and argued it would be impracticable to "parse out certain sections without having a full and complete understanding of the context of the statements that [Jean] makes." The State also argued the testimony was admissible on the bases of in-court statements, residual hearsay, and the hearsay exception for coconspirators.

The court told the parties it "would have liked to have had a little more time to consider these things [but] I'll make the best ruling that I can on the circumstances that I'm presented with." The court overruled Jean's motion in limine and indicated it would allow the transcript from Kenneth's trial into evidence because it provided necessary context for the jury to evaluate Jean's testimony and the circumstances that gave rise to the perjury charge. However, the court stated it would give a limiting instruction to the jury on the specific purpose for which the transcript could be considered.

It is undisputed that, in addition to the testimony of the various witnesses, the transcript of Kenneth's trial included the county court's comment that it believed perjury had been committed by the defense. The comment appeared on page 129 of the 131-page exhibit, and nothing in our record suggests that Jean ever complained of the judicial comment or otherwise brought it to the attention of the district court judge either before, during, or after her trial.

Jean's jury trial began immediately after the hearing on the motion in limine. During opening statements, the special prosecutor provided the jury with background information on Kenneth's trial and informed the jury that "[Kenneth] was found guilty in that proceeding, and [Jean] testified." Jean did not object to the special prosecutor's opening statement. Subsequently, counsel for Jean informed the jury in her opening statement:

Over the course of today you're going to hear evidence, as [the special prosecutor] stated, about [Kenneth] and the trial he had downstairs in Kimball County back on August 1 of 2016. And as [the special prosecutor] pointed out, it was a charge of injury to a public road. And I think you'll hear testimony that there was what I would call a drain going across the road. And there was a trial and [Jean] testified on behalf of her husband, and he was convicted. He was found guilty of injuring a public road. And subsequent to that, [Jean] has now been charged with perjury.

Lt. Travis Wallace with the Nebraska State Patrol, who investigated Jean's suspected perjury, testified on behalf of the State. According to Wallace, Jean stated in an interview that "[she and her husband] had made a line in the road to drain water" and that "the water made a small trench across the street." Jean also informed Wallace that "[she and her husband] used a stick to make a small line in the road." On cross-examination, Wallace testified that Jean told him she felt her testimony in Kenneth's trial was honest.

The State's second witness, Knigge, testified to the events involving the trench, explaining that when she first arrived at the Childses' residence in February 2016, she observed a trench across the public road that "looked like it was dug with a spade." Knigge further testified that she spoke with Jean while standing next to the trench and that Jean told her water accumulated at the edge of their property and "the only reason there [was] a little trench is because they [had] a big water puddle."

The State then offered exhibit 4, the entire transcript of Kenneth's trial, into evidence, and the district court judge remarked:

> **THE COURT:** I will note the prior comments and objection made to Exhibit 4, and I assume you are renewing those at this time?
>
> [Defense counsel:] Yes, your Honor.

**THE COURT:** The Court will receive Exhibit 4 subject to its prior ruling on 4. And noting those objections and for purposes of today will overrule those objections.

The court also gave the following limiting instruction regarding exhibit 4:

The court specifically notes and directs your attention to Exhibit 4. This Exhibit is offered for the limited purpose of providing the context and content of [Jean's] testimony in the matter of the State of Nebraska v. Kenneth Childs in the County Court of Kimball County, Nebraska[,] Case No. CR16-62. It may be used for no other purpose.

There was no objection to the limiting instruction.

David Wilson, the prosecuting county attorney from Kenneth's trial, also testified on behalf of the State. Wilson testified that during Kenneth's trial, both the street commissioner and the Village clerk were asked whether they had given the Childses permission to dig a trench on the public street, and that both denied giving any such permission. Wilson further testified that during Jean's examination at Kenneth's trial, Jean testified there was no trench or ditch in the road when Knigge came to investigate. Wilson read an excerpt of his cross-examination of Jean on that issue, in which Wilson asked Jean whether she recognized exhibit 1, which others had testified was a photograph of the trench. Wilson told the jury that Jean testified she did not recognize what was depicted in the photograph and said it "'looks like dirt.'" Wilson told the jury that when being examined at trial, Jean expressly denied that the road looked as depicted in the photograph when Knigge came to investigate, adding, "'We have a puddle of water — and my opinion is [the neighbor] hates us so much . . . that he probably dug it himself and then had the picture taken."

The State also elicited testimony from Wilson about Kenneth's conviction:

**Q.** And the judge found [Kenneth] guilty of injury to the public road.

**A.** He did.

. . . .

**Q.** So, [Kenneth], when that case [w]as proven beyond a reasonable doubt, would have committed a law violation, specifically injuring or obstructing a public road by plowing or digging a ditch or other opening thereon, specifically Vine Street in Dix, Nebraska?

**A.** Yes.

At the close of the State's case in chief, Jean moved for a directed verdict. In support, Jean's counsel argued that to secure a conviction for perjury under § 28-915, the State must prove (1) the defendant made a false statement under oath, (2) the statement was material, and (3) the defendant did not believe the statement to be true.[1] Jean argued that her statements during Kenneth's trial were not material and that she did not believe her statements to be untrue. The court overruled the motion, reasoning that the materiality of Jean's statements, and what she believed when the statements were made, were issues of fact for the jury to decide. Jean did not present any evidence after her motion was overruled.

After deliberating for about an hour, the jury returned a verdict finding Jean guilty of perjury. The court entered judgment in accordance with the verdict, and no posttrial motions were filed. The court sentenced Jean to probation, after which she filed this timely appeal.

## II. ASSIGNMENTS OF ERROR

Jean assigns, reordered and restated, that the district court erred in (1) overruling her hearsay objections to exhibit 4, (2) overruling her motion for a directed verdict, (3) allowing the prosecutor to comment on her husband's conviction during opening statements and when questioning a witness, and (4) "allowing evidence that contained statements of the [county] court's opinion as to the guilt of [Jean] to go to the jury for consideration."

---

[1] See *State v. McCaslin*, 240 Neb. 482, 482 N.W.2d 558 (1992).

## III. STANDARD OF REVIEW

[1] In an appellate court's consideration of a criminal defendant's motion for a directed verdict, the State is entitled to have all its relevant evidence accepted as true, every controverted fact resolved in its favor, and every beneficial inference reasonably deducible from the evidence.[2]

[2] When the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, an appellate court reviews the admissibility of evidence for an abuse of discretion.[3] Apart from rulings under the residual hearsay exception, an appellate court reviews for clear error the factual findings underpinning a trial court's hearsay ruling and reviews de novo the court's ultimate determination to admit evidence over a hearsay objection or exclude evidence on hearsay grounds.[4]

[3,4] An appellate court may find plain error on appeal when an error unasserted or uncomplained of at trial, but plainly evident from the record, prejudicially affects a litigant's substantial right and, if uncorrected, would result in damage to the integrity, reputation, and fairness of the judicial process.[5] Generally, we will find plain error only when a miscarriage of justice would otherwise occur.[6]

## IV. ANALYSIS

### 1. No Error in Overruling Hearsay Objection

Jean contends the district court erred in overruling her hearsay objections to that portion of the transcript from Kenneth's trial containing the testimony of Knigge, Miller, McKinney,

---

[2] *State v. Stanko*, 304 Neb. 675, 936 N.W.2d 353 (2019).

[3] *AVG Partners I Genesis Health Clubs*, 307 Neb. 47, 948 N.W.2d 212 (2020).

[4] *Id.*

[5] *State v. Senteney*, 307 Neb. 702, 950 N.W.2d 585 (2020).

[6] *Id*.

and Williams. Jean argues that although the State claimed the testimony was admissible under the residual hearsay exception, it failed to provide advance notice of its intent to use that exception as required by Neb. Rev. Stat. § 27-803(23) (Reissue 2016).

The State counters that the trial court's ruling on the admissibility of the transcript, along with the limiting jury instruction regarding the proper use of the transcript, demonstrates that the transcript was not received into evidence under the residual hearsay exception and was not offered for the truth at all, but instead for necessary context. We agree.

Neb. Rev. Stat. § 27-801(3) (Reissue 2016) defines hearsay as a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted," and Neb. Rev. Stat. § 27-802 (Reissue 2016) prohibits the admission of hearsay except as provided under our rules of evidence. Although the State initially argued that the transcript was admissible under the residual hearsay exception, the court received the transcript into evidence reasoning it was admissible nonhearsay evidence. The court determined the transcript was not being offered for the truth of the matter asserted, but instead was offered "for the limited purpose of providing the context and content of [Jean's] testimony" in Kenneth's trial. The court gave the jury a limiting instruction consistent with that stated purpose, and it expressly told them the transcript "may be used for no other purpose." Jean did not object to the limiting instruction and presents no argument that it was inadequate.

On this record, we see no error in the trial court's decision to overrule Jean's hearsay objection. This assignment of error has no merit.

## 2. No Error in Denying Directed Verdict

Jean moved for a directed verdict at the close of the State's evidence, and she presented no evidence after the motion was

overruled. She therefore has preserved for appellate review the district court's denial of her motion for a directed verdict.

[5,6] In a criminal case, the court can direct a verdict only when (1) there is a complete failure of evidence to establish an essential element of the crime charged or (2) evidence is so doubtful in character and lacking in probative value that a finding of guilt based on such evidence cannot be sustained.[7] Additionally, when a motion for a directed verdict made at the close of all the evidence is overruled by the trial court, appellate review is controlled by the rule that a directed verdict is proper only where reasonable minds cannot differ and can draw but one conclusion from the evidence, and the issues should be decided as a matter of law.[8]

[7,8] Section 28-915 sets forth three elements necessary to prove perjury: (1) the defendant makes a false statement under oath, (2) the statement is material, and (3) the defendant did not believe the statement to be true.[9] Additionally, no person can be convicted of perjury under this section when proof of falsity rests solely upon contradiction by testimony of a single person other than the defendant.[10] Furthermore, we have held that perjury must be proved by at least two witnesses or by a single witness, together with material and established corroborative facts sufficient to amount to the testimony of another witness.[11]

During Kenneth's trial, Jean repeatedly testified under oath that she and her husband did not dig a trench in the road, and she testified that the trench did not exist when Knigge and Williams visited the Childses' property. During Jean's perjury trial, the State offered testimony from three witnesses, and

---

[7] *Stanko, supra* note 2.

[8] *State v. Williams*, 306 Neb. 261, 945 N.W.2d 124 (2020).

[9] See *McCaslin, supra* note 1.

[10] § 28-915(7).

[11] *McCaslin, supra* note 1.

a corroborating photograph, directly contradicting the truth of these statements. The statements were material to the misdemeanor charge on which Kenneth was being tried, and although Jean emphasizes that she told the Nebraska State Patrol investigator that she did not think her statements during Kenneth's trial were untrue, the State presented evidence from which reasonable inferences could be drawn to the contrary. For instance, the State presented evidence that Jean alternated between denying the trench existed and admitting that the trench existed but claiming that the Childses had permission to dig the trench, that they used a stick to make a "line" in the road and drain water, that the trench developed when she used a broom to push standing water off their property, or that the street commissioner may have dug the trench.

During Jean's trial, the State adduced evidence supporting each element of perjury. On a motion for a directed verdict, the State must be afforded the benefit of every inference reasonably deducible from that evidence.[12] We find no error in overruling Jean's motion for a directed verdict and submitting the case to the jury. This assignment of error is meritless.

### 3. No Plain Error

Jean's remaining two assignments of error involve complaints that were never presented to, or considered by, the district court. Because the failure to make a timely objection waives the right to assert prejudicial error on appeal,[13] Jean generally asks that we review both assignments under our plain error jurisprudence.

[9] We have long held that an appellate court may find plain error on appeal when an error unasserted or uncomplained of at trial, but plainly evident from the record, prejudicially

---

[12] See *Stanko, supra* note 2.

[13] *Western Ethanol Co. v. Midwest Renewable Energy*, 305 Neb. 1, 938 N.W.2d 329 (2020).

affects a litigant's substantial right and, if uncorrected, would result in damage to the integrity, reputation, and fairness of the judicial process.[14] Plain error should be resorted to only in those rare instances where it is warranted,[15] and it is warranted only when a miscarriage of justice would otherwise occur.[16] Plain error is not a vehicle that should be routinely used to save an issue for appeal where a proper objection should have been, but was not, made at trial.[17] With this settled standard in mind, we review Jean's final two assignments and find no plain error.

### (a) Prosecutor's Comments

Jean assigns that the district court erred by allowing the prosecutor to comment on Kenneth's conviction during opening statements and while questioning a witness. She asserts that the prosecutor's remarks were irrelevant, inadmissible, and undermined her right to a fair trial. However, Jean did not object to the prosecutor's comments, nor did she move for a mistrial alleging prosecutorial misconduct. As such, our appellate review is confined to a search for plain error.

[10-13] When assessing a claim of alleged prosecutorial misconduct, an appellate court first determines whether the prosecutor's acts constituted misconduct.[18] Prosecutorial misconduct encompasses conduct that violates legal or ethical standards for various contexts because the conduct will or may undermine a defendant's right to a fair trial.[19] Prosecutors are charged with the duty to conduct criminal trials in such a

---

[14] *Senteney, supra* note 5.

[15] *State v. McSwine*, 292 Neb. 565, 873 N.W.2d 405 (2016).

[16] *Senteney, supra* note 5.

[17] *McSwine, supra* note 15.

[18] See *State v. Guzman*, 305 Neb. 376, 940 N.W.2d 552 (2020).

[19] *State v. Mrza*, 302 Neb. 931, 926 N.W.2d 79 (2019).

manner that the accused may have a fair and impartial trial, and prosecutors are not to inflame the prejudices or excite the passions of the jury against the accused.[20] A prosecutor's conduct that does not mislead and unduly influence the jury does not constitute misconduct.[21]

During opening statements, the prosecutor informed the jury that Kenneth had been convicted of injury to a public road and that Jean testified in Kenneth's defense at the trial. Notably, Jean's counsel made similar remarks during her opening statement. The prosecutor also elicited testimony from Wilson, the prosecutor in Kenneth's case, confirming that the county court found Kenneth guilty of injuring or obstructing a public road.

The prosecutor's brief references to Kenneth's conviction were accurate and provided context for Jean's charge, were not misleading, and were not phrased or delivered in a way that suggests they were intended to inflame prejudice or excite the passions of the jury against Jean. We see no error, let alone plain error, in the court's "allowing" these statements.

### (b) Judicial Comment in Transcript

Lastly, Jean argues the district court erred in "allowing evidence that contained statements of the [county] court's opinion as to the guilt of [Jean] to go to the jury for consideration." The judicial statement about which Jean complains appeared near the end of the 131-page transcript from Kenneth's trial, when the judge said to Kenneth: "I am also going to direct the county attorney's office to contact the Nebraska State Patrol, because I believe perjury was committed by the defense in this case today and, also, aiding and abetting perjury by you in your questioning and the statements that you've made." Jean argues that even though this comment was made by the judge in Kenneth's case, it "spoke directly to the Judge's opinion

---

[20] *Id.*

[21] *Id.*

of [her] guilt"[22] and "suggest[ed] to the jury what the judge of [Kenneth's] case believed an appropriate verdict would be" in Jean's case.[23]

Jean did not, at any point, object to the transcript based on the inclusion of this judicial comment or ask to redact the comment. She does suggest, in her reply brief, that remarks by her lawyer while arguing the motion in limine were sufficient to preserve this alleged error, but we soundly reject that suggestion.

[14] An objection must be specifically stated, and on appeal, a defendant may not assert a different ground for his or her objection to the admission of evidence than was offered to the trier of fact.[24] In other words, an objection, based on a specific ground and properly overruled, does not preserve a question for appellate review on any other ground.[25]

Jean's motion in limine sought only to exclude, as inadmissible hearsay, the portions of the transcript that contained the trial testimony of Knigge, Miller, McKinney, and Williams. At the hearing on the motion, Jean reiterated this request and asked that "the testimony of the other parties from the transcript . . . be stricken" and that "all the portions that are not [Jean's] testimony be redacted as they're hearsay and will be prejudicial to her." At all times, Jean's hearsay objection was confined to the testimony of the witnesses and no mention was made, in passing or otherwise, to the findings or comments

---

[22] Reply brief for appellant at 7.

[23] *Id.* at 6.

[24] See, *State v. Timmens*, 263 Neb. 622, 641 N.W.2d 383 (2002); *State v. Harris*, 263 Neb. 331, 640 N.W.2d 24 (2002). See, also, *Rocek v. Department of Public Institutions*, 225 Neb. 247, 404 N.W.2d 414 (1987); *Gateway Bank v. Department of Banking*, 192 Neb. 109, 219 N.W.2d 211 (1974); *Fries v. Goldsby*, 163 Neb. 424, 80 N.W.2d 171 (1956).

[25] *Timmens, supra* note 24; *State v. Davlin*, 263 Neb. 283, 639 N.W.2d 631 (2002).

of the county court judge. Jean renewed the same objection at trial, and it was overruled. Because Jean never raised an objection to the judicial comments she now claims should have been redacted from the transcript, we review this assignment for plain error, and we necessarily confine our analysis to the alleged error as Jean has framed it.

Jean claims the district court erred by "allowing" the transcript to "go to the jury for consideration" when it contained the judicial comment about suspected perjury. In other words, she contends the district court erred by not sua sponte reviewing the transcript and redacting the judicial comment before allowing the jury to consider it. And since no party brought the judicial comment on page 129 to the court's attention, Jean's contention necessarily presumes that the district court had a duty to examine all 131 pages of the transcript before allowing it to go back to the jury.

We have been directed to no rule of law in Nebraska requiring a trial judge to review, sua sponte, each exhibit offered in a criminal trial to ensure that no statement or inference contained therein might be prejudicial to one of the parties. Indeed, the only authority we find on the question from other jurisdictions supports quite the opposite conclusion.[26]

We recently considered, and rejected, a somewhat analogous claim: that the trial court was obligated to rule sua sponte on the admissibility of testimony during a criminal trial.[27] In

---

[26] See, *U.S. v. Snype*, 441 F.3d 119 (2d Cir. 2006) (finding no plain error in trial court's failure to redact information from exhibit because no rule of law required trial judge to sua sponte review exhibit to ensure it contained nothing prejudicial); *Havilah Real Property Services v. VLK, LLC*, 108 A.3d 334 (D.C. App. 2015) (finding no plain error in trial court's admission of exhibits containing hearsay, because documents were admitted for limited purpose and limiting instruction was given, and there was no support for argument that judge was required sua sponte to review each exhibit for potential evidentiary issues before admission).

[27] See *Senteney, supra* note 5.

*State v. Senteney*,[28] the defendant failed to timely object to a witness' testimony regarding indicators of deception that the defendant exhibited during an interview. But on appeal, the defendant argued it was plain error for the court to allow this testimony, as it amounted to one witness testifying to the credibility of another witness.[29] We ultimately found that any error in the presentation of the witness' testimony did not rise to the level of plain error.[30] We acknowledged that without an objection, the trial court was not asked to rule on the admissibility of the witness' testimony, and that therefore, it could not be said that the court made an erroneous evidentiary ruling.[31] We reasoned that during a trial, a court is not obligated to rule sua sponte on the admissibility of testimony, and that without an objection, we could not say the court committed plain error when it allowed specific testimony.[32] We ultimately concluded the witness' testimony did not rise to the level of plain error because the testimony regarding the indicators of deception was a relatively small part of his testimony overall, and was not emphasized by the prosecutor during closing arguments.[33]

[15] In connection with our appellate review, we often decline to scour the record on appeal in search of facts that might support a claim if not cited by a party in its brief, even if the failure to do so may result in our overlooking a fact or otherwise treating a matter under review as if that fact does not exist.[34] We see nothing on this record that compels us to

---

[28] *Id.*

[29] *Id*. See, also, *State v. Rocha*, 295 Neb. 716, 890 N.W.2d 178 (2017).

[30] See *Senteney, supra* note 5.

[31] See *id*.

[32] See *id*. (citing *State v. Pointer*, 224 Neb. 892, 402 N.W.2d 268 (1987)).

[33] See *Senteney, supra* note 5.

[34] See *State v. Dill*, 300 Neb. 344, 913 N.W.2d 470 (2018). See, also, *In re App. No. C-4973 of Skrdlant*, 305 Neb. 635, 942 N.W.2d 196 (2020).

hold trial courts to a different standard, and we decline Jean's invitation to impose a new duty on trial courts to review all exhibits sua sponte for potentially prejudicial content not objected to by the parties.[35] As we recently explained in *State v. Thomas*,[36] "'It is not the judge's responsibility to sever the bad parts [of an exhibit] if some are good. That is the opponent's burden.'"

Here, the judge's comment appeared on page 129 of a 131-page exhibit. While the comment would have been plainly evident to anyone who reviewed the entire transcript, neither party brought the judicial comment to the district court's attention, and we can find no error, let alone plain error, in the district court's failure to sua sponte review the exhibit and redact the comment. Such is not the proper role of the trial court.

Moreover, even if we could find judicial error in not reviewing the exhibit sua sponte, and even if we assume that the jurors noticed the comment during deliberations and understood the judge was expressing an opinion that Jean had committed perjury while testifying for the defense, we could not find that the failure to redact the comment rises to the level of plain error. First, we would have to ignore the limiting

---

[35] Accord, *U.S. v. Williams*, 527 F.3d 1235, 1247 (11th Cir. 2008) (for admission of evidence to constitute plain error, evidence must have been "'so obviously inadmissible and prejudicial that, despite defense counsel's failure to object, the district court, *sua sponte,* should have excluded the evidence'"). See, also, *U.S. v. Browne*, 953 F.3d 794, 800 (D.C. Cir. 2020) ("[r]are indeed would the case be in which we would find plain error in a judge's failure to *sua sponte* exclude evidence"); *Proenza v. State*, 541 S.W.3d 786 (Tex. Crim. App. 2017) (recognizing trial judge has no duty to enforce forfeitable rights unless requested to do so); *United States v. Amador-Flores*, 728 Fed. Appx. 839 (10th Cir. 2018) (for admission of testimony to be plain error, testimony must have been so obviously inadmissible and prejudicial that, despite opposing party's failure to object, court *sua sponte* should have excluded testimony).

[36] *State v. Thomas*, 303 Neb. 964, 981, 932 N.W.2d 713, 726 (2019) (quoting 1 McCormick on Evidence § 52 (Kenneth S. Broun et al. eds., 7th ed. 2013 & Supp. 2016)).

instruction, which expressly told the jurors not to consider the transcript for any purpose other than "providing the context and content of [Jean's] testimony" in Kenneth's trial. The trial judge also gave the jury the standard instruction that the law does not permit the judge to comment on the evidence and that if it appeared the judge had commented on the evidence, the jury was to disregard such comment. Absent evidence to the contrary, it is presumed that a jury followed the instructions given in arriving at its verdict.[37]

Here, the properly admitted evidence that Jean committed perjury during Kenneth's trial was overwhelming; even if we assume the jury discovered the judicial comment during deliberations and understood it to express an opinion that Jean had committed perjury, failing to correct the error would not result in a miscarriage of justice or damage the integrity, reputation, and fairness of the judicial process.[38]

## V. CONCLUSION

For the foregoing reasons, we conclude the assigned errors are without merit, and we find no plain error. We therefore affirm the judgment of the district court.

Affirmed.

---

[37] *State v. Swindle*, 300 Neb. 734, 915 N.W.2d 795 (2018).

[38] See *Senteney, supra* note 5.

Heavican, C.J., dissenting.

I respectfully dissent.

During Kenneth Childs' misdemeanor trial for injury to a public road, Kenneth, unrepresented by an attorney, called his wife, Jean Childs, as his only defense witness. After Jean's testimony, the county court judge commented, on the record, "I believe perjury was committed by the defense in this case today . . . ." Despite not naming her, the comment, when read in context, obviously implicated Jean. The judge also directed the county attorney's office to contact the Nebraska State Patrol to pursue perjury charges against Jean.

A transcript containing those comments was admitted to the jury in Jean's subsequent felony trial for perjury. The transcript then accompanied the jurors to their deliberations room, where they adopted the same conclusion as the county court judge that Jean had committed perjury.

Despite Jean's objection to "all the portions [of the transcript] that are not [Jean's] testimony," the majority believes she failed to adequately raise the county court judge's prejudicial comments in the transcript as an issue for appellate review. A more generous reading of Jean's objection would find it sufficient. However, for purposes of this dissent, I accept that the objection was not adequate and that our review is instead for plain error. Still, I would find such plain error and reverse.

Plain error exists when there is an error, plainly evident from the record but not complained of at trial, which prejudicially affects a substantial right of a litigant.[1] To warrant reversal on appeal, a plain error at trial must be of such a nature that to leave it uncorrected would result in a miscarriage of justice or damage to the integrity, reputation, and fairness of the judicial process.[2]

The majority characterizes the main issue as being whether a trial judge has a duty "to review, sua sponte, each exhibit offered in a criminal trial to ensure that no statement or inference contained therein might be prejudicial to one of the parties." Throughout its analysis of that issue, the majority then emphasizes Jean's failure to raise a specific objection at trial before it concludes that her failure to offer the court an opportunity to make a correct ruling results in no plain error.

But in my view, this framing misses the point. After determining initially that an error was not complained of at trial, an appellate court's next step is not to reassess whether the error was complained of at trial. That step is done. Rather, the next step is to assess whether the error resulted in a miscarriage

---

[1] See *State v. Senteney*, 307 Neb. 702, 950 N.W.2d 585 (2020).

[2] See *id.*

of justice or damage to the integrity, reputation, and fairness of the judicial process.[3] By permeating its second step of plain error review with a reassessment of whether Jean made a specific objection at trial, the majority conflates the initial procedural inquiry of whether there was an adequate objection with the later substantive assessment of whether the error resulted in such prejudice that it needs to be corrected.

In collapsing its analysis in this way, the majority would neuter our plain error review. Rather than reviewing errors that were unobjected to at trial for their threat of clear harm to the judicial process, the majority would simply find the errors not plain enough because they were unobjected to at trial. Such circular logic defies the purpose and effect of our plain error review, which, after all, only exists to consider errors that were unobjected to at trial.

Indeed, the majority's approach is unsupported by the principal authority cited in its opinion. In *State v. Senteney*,[4] the trial court had erroneously admitted a detective's testimony that the defendant may have been deceptive during an interrogation. After finding the defendant had failed to object to the detective's testimony at trial, we moved to the separate substantive assessment of whether the trial court's erroneous admission of that evidence was plain error. We held it was not—not simply because the evidence had not been brought to the judge's attention at trial, but because the evidence had been a relatively small part of the prosecution's case and had not gone to the ultimate issue at trial of the defendant's guilt of sexual assault of a child. In *Senteney*, the evidence's relatively inconsequential role at trial lessened its apparent threat of harm to the judicial process.

In contrast, here, the comments were not isolated in the middle of other evidence, but positioned obviously on the penultimate page of the transcript, one of only three exhibits

---

[3] See *id.*

[4] *Id.*

offered by the State at Jean's trial. Although the transcript was 131 pages in length, the district court need not have scoured all of those pages to detect the county court judge's prejudicial comments. After all, Jean did object on hearsay grounds to admitting the portion of the transcript that contained testimony from persons other than her. Even if that objection was not specific enough to preserve her appeal of that issue, I see no reason that it should not be relevant in our determination of whether the error was plain in the record.

And the evidence at issue was of immense consequence at trial. The county court judge's comment—that "perjury [had been] committed by [Jean]"—went straight to the heart of the ultimate issue at Jean's trial. The danger that lies in a judge's comments being admitted as testimony at trial is that simply by virtue of the judge's position, the jurors will give too much credence to his or her testimony.[5] A judge's position and authority bestow him or her with an "'imprimatur of character, credibility and reliability.'"[6] We have thus warned that "'heightened scrutiny'" should be applied before a judge can be compelled to testify.[7] Because a judge retains his or her position and authority regardless of whether he or she is then presiding in the case, it is no less of a plain error for a judge's testimony to be used in a case over which he or she is not presiding.

In *State v. Smith*,[8] an appellate court in Ohio reversed a perjury conviction with similar facts. The trial court had allowed the judge presiding over the first trial to opine in the subsequent perjury trial that the defendant had committed perjury. Much like the instant case, the first judge in *Smith* had "drafted a letter to both the administrative judge of the

---

[5] See, *Cornett v. Johnson*, 571 N.E.2d 572 (Ind. App. 1991); *Merritt v. Reserve Ins. Co.*, 34 Cal. App. 3d 858, 110 Cal. Rptr. 511 (1973).

[6] *Rubens v. Mason*, 387 F.3d 183, 190 (2d Cir. 2004). Accord *Kennedy v. Great Atlantic & Pacific Tea Co.*, 551 F.2d 593 (5th Cir. 1977).

[7] *State v. Sims*, 272 Neb. 811, 827, 725 N.W.2d 175, 189 (2006).

[8] *State v. Smith*, 2015 Ohio 1736, 32 N.E.3d 517 (2015).

court of common pleas and the Cuyahoga County Prosecuting Attorney requesting that [the defendant] be investigated for perjury."[9] The decision reversing the perjury conviction noted that the judge, as witness, had used terms that have legal meaning and that such testimony is not helpful, because "'the testimony attempts to answer, rather than aid the jury in answering, the ultimate question at issue.'"[10]

The facts in this case are no less troubling in their measure of threat to the judicial process. The issue at the heart of Jean's perjury trial was whether she had lied during Kenneth's trial. By admitting the judge's pronouncement that Jean had committed perjury, "the [district court] effectively removed the issue of [Jean's] credibility from the jury."[11] The comments were allowed to invade the province of the jury and thereby damage the integrity of Jean's conviction.[12]

As we have previously observed, "We are not inclined to readily find plain error in [evidence] to which the opposing party did not object."[13] But where that error—even though it was unobjected to at trial—is plainly evident from the record and harmful to the fairness of the judicial process, we must reverse the judgment of the court below.[14] Because, in my view, it was plain error to allow the jury to see the county court judge's comment that Jean had committed perjury, I would reverse the judgment of the district court.

Miller-Lerman, J., joins in this dissent.

---

[9] *Id.* at ¶ 4, 32 N.E.3d at 520.

[10] *Id.* at ¶ 16, 32 N.E.3d at 523.

[11] *State v. Privat*, 251 Neb. 233, 242, 556 N.W.2d 29, 35 (1996).

[12] See *id.*

[13] *Senteney, supra* note 1, 307 Neb. at 711, 950 N.W.2d at 592.

[14] See *id.*

Miller-Lerman, J., dissenting.

I respectfully dissent. As an appellate court, we serve as a safety net to protect the integrity of the judicial process

occasionally through the appellate procedure known as plain error review. We are not about finding fault with the rulings of the trial judges, overburdened though they may be. In this case, the remarks of the county judge to the effect that Jean Childs had committed perjury in an earlier trial were inadvertently, but prejudicially, placed before the jury in Jean's perjury trial. The error is plainly evident from the record and to leave it uncorrected would result in damage to the integrity, reputation, and fairness of the judicial process.

*Plain Error Review.*

Our customary definition of plain error review is as follows: "Plain error may be found on appeal when an error unasserted or uncomplained of at trial, but plainly evident from the record, prejudicially affects a litigant's substantial right and, if uncorrected, would result in damage to the integrity, reputation, and fairness of the judicial process." *State v. Mann*, 302 Neb. 804, 809, 925 N.W.2d 324, 329 (2019). Plain error review is an appellate process. Given this definition, there is no need for the majority to highlight Jean's failure to complain about the admissibility of the county judge's remarks; such exposition is superfluous in a plain error review. Failure to complain at trial is baked into the plain error exercise and such failure to object is of no legal consequence once the appellate court has embarked on a plain error review.

*It's Not Sua Sponte, It's an*
*Evidentiary Ruling.*

The majority writes at length about there being no obligation by the trial court to rule sua sponte on the contents of the evidence consisting of the transcript of Kenneth's trial, which included the offending remarks. This discussion tends to overlook the fact that the transcript was an exhibit upon which the court was required to rule and which it admitted into evidence. Compare *State v. Senteney*, 307 Neb. 702, 950 N.W.2d 585 (2020) (discussing live testimony). Under our rules, an alleged

error in ruling on a piece of evidence such as the transcript at issue is subject to appellate plain error review.

Neb. Rev. Stat. § 27-103(4) (Reissue 2016) provides: "Nothing in this rule [regarding admissibility of evidence] precludes taking notice of plain errors affecting substantial rights although they were not brought to the attention of the judge." So the process which led to our current review is wholly anticipated by the evidentiary rules. We have long applied § 27-103(4) to appellate review involving admitted evidence. See, e.g., *State v. Pointer*, 224 Neb. 892, 402 N.W.2d 268 (1987).

*The Trial Judges Are Okay:*
*Inadvertent Errors.*

The majority opinion is laden with concern that the trial judges might be expected to scour exhibits and to rule sua sponte on things and might be offended if this court reverses a matter based on plain error. I am not indifferent to the risk of overburdening the very able trial judges of this State. But it is inappropriate to let such concern outweigh the object of the plain error review, i.e., to preserve the integrity, reputation, and fairness of the judicial process. The U.S. Supreme Court has observed: "The Court repeatedly has reversed judgments for plain error on the basis of inadvertent or unintentional errors of the court or the parties below." *Rosales-Mireles v. U.S.*, ___ U.S. ___, 138 S. Ct. 1897, 1906, 201 L. Ed. 2d 376 (2018). That seems to be the circumstance here. Identification of an inadvertent error serves not to criticize the trial judge, but, rather, to strengthen the integrity of the judicial process.

The U.S. Supreme Court explained that the error under consideration in the plain error appellate review need not be obvious or clear to the trial judge. *Henderson v. United States*, 568 U.S. 266, 135 S. Ct. 1780, 191 L. Ed. 2d 874 (2013). The Court stated, "[P]lain error review is not a grading system for trial judges." *Id.*, 568 U.S. at 278. I am confident the trial judges of this state understand this.

*The Error Was Plainly Evident From*
*the Record and Requires Reversal.*

Our definition of plain error is error unasserted or uncomplained of at trial, but is plainly evident from the record and of such a nature that to leave it uncorrected would result in damage to the integrity, reputation, or fairness of the judicial process. See *Senteney, supra.* Under our historical standard, I conclude that, regardless of sua sponte distractions, the challenged material is "obvious" to an appellate court and "plain" from the record and thus, because of the harm done, requires reversal. The district court perhaps inadvertently made an incorrect ruling; but the correct standard is whether the error is plainly evident from the record, not was it plainly evident to the trial judge.

On the last page of the trial exhibit—no scouring of the record required—the county judge states that "I believe perjury was committed by the defense in this case today" and that Kenneth, who did not testify, aided and abetted perjury by Jean. In the exhibit, the county judge also directed the county attorney's office to contact the Nebraska State Patrol to pursue perjury charges against Jean. These remarks are plainly evident from the record.

The transcript containing these comments made by the county judge in Kenneth's trial was ruled admissible pursuant to a requested ruling in Jean's perjury trial. The county judge's remarks, although verbal, were included in evidence, not testimony. The jury was instructed to consider the evidence. Contrary to the majority's puzzling suggestion, the jury was not advised to ignore the county judge's remarks enshrined in the exhibit transcript. The transcript accompanied the jury to the jury room where deliberations took place and provided the jury an opportunity to review and weigh the evidence, including the county judge's remarks. I agree with the reasons recited in Chief Justice Heavican's dissent to the effect that the county judge's remarks that Jean lied under oath at Kenneth's trial and were admitted in her trial for perjury

bore extraordinary weight and removed the penultimate issue of Jean's credibility from the jury. I conclude that the county judge's remark that Jean lied under oath was erroneously and prejudicially admitted in her perjury trial and resulted in damage to the integrity, reputation, and fairness of the judicial process and requires reversal.

In the end, contrary to the majority's reasoning, our appellate analysis needs to be viewed in relation to the integrity of the process absent undue sympathies for the trial judge. It is not a good look for the Nebraska appellate authority vested in the Nebraska Supreme Court to permit a judge not under oath to advise the jury in a perjury trial that the defendant lied.