IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. WRIGHT

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

CHAD W. WRIGHT, APPELLANT.

Filed October 3, 2023.    No. A-23-027.

Appeal from the District Court for Lancaster County: LORI A. MARET, Judge, on appeal thereto from the County Court for Lancaster County: LAURIE J. YARDLEY, Judge. Judgment of District Court affirmed.

Sam Baue, of McHenry, Haszard, Roth, Hupp, Burkholder, Blomenberg & Camplin, P.C., L.L.O., for appellant.

Yohance L. Christie, Lincoln City Attorney, and Connor L. Reuter for appellee.

PIRTLE, Chief Judge, and MOORE and RIEDMANN, Judges.

PIRTLE, Chief Judge.

## INTRODUCTION

Chad W. Wright appeals from the district court for Lancaster County, which affirmed Wright's convictions in Lancaster County Court on charges of disturbing the peace and loiter and trespass. For the reasons that follow, we affirm.

## BACKGROUND

In October 2021, the State filed a criminal complaint in county court charging Wright with one count of disturbing the peace and one count of loiter and trespass in violation of Lincoln Mun. Code §§ 9.20.05(a) and 9.24.190(a) respectively. Wright pled not guilty, and the case proceeded

to a bench trial over the course of two days in March and May 2022. After trial, the county court found Wright guilty on both counts. The following is a summary of the evidence adduced at trial.

On May 19, 2021, Wright visited an Office Depot store in Lincoln, Nebraska. There was a city-wide COVID-19 related "mask mandate" in effect at the time, and it was store policy to recommend mask usage, but Wright was not wearing a face covering. Upon entering the store, Wright made contact with an employee, Jeannie Pickrel, who directed Wright to a table where masks were being provided for customers. According to Pickrel, Wright responded "something to the effect of, 'The CDC says I don't have to wear a mask anymore[,]'" as the national mask mandate had been recently lifted. Pickrel explained that, while that may be true, the city mandate was still in effect, and she again directed Wright to the provided masks. Wright left the store, but he returned a few minutes later and asked to speak with a manager.

Pickrel directed Wright to the manager on duty, Tim Homstad, who was stationed behind the "tech bench" about 25 feet away. Homstad eventually approached the front of the store where Wright was standing, and Pickrel turned her attention to a customer waiting to checkout. Pickrel did not recall all that was said, but she recalled Wright and Homstad conversing with raised voices and they appeared to be "upset." Pickrel also recalled that Homstad "asked [Wright] to leave about four or five times." Pickrel recalled that the customer she was helping asked to remain in the store until Wright was gone "because she was a little scared." Wright and Homstad had a brief interaction in the store before both exiting into the parking lot. Pickrel did not recall whether Homstad or Wright exited first, but she assumed that Homstad decided to "take it outside so it didn't disrupt the customer again."

Homstad recalled observing the discussion between Wright and Pickrel when he entered the store the first time, and he understood Wright to be saying that he did not want to wear a mask. Homstad testified that when Wright returned and asked to speak with the manager, Homstad confirmed that Wright did not have a medical condition that prevented him from wearing a face covering. Homstad also offered to have an employee do Wright's shopping for him. Homstad recalled that Wright then "started to get a little agitated."

Homstad testified that Wright "raised his voice very abruptly," and Homstad told Wright that "if he was going to get agitated, he should really leave the store." Homstad asked Wright to lower his voice and told him that "if he didn't want to lower his voice, he needed to leave." Yet, Wright "kept on raising his voice louder and louder" saying "[c]all the police . . . I don't need to leave." At that point, Homstad stated, "Sir, . . . I'm asking you to please leave," but Wright "was getting more disturbed and angry about stuff to the point where the girl that was checking out asked if she could step behind the counter because she was afraid to leave." Homstad estimated that he asked Wright to leave the store "close to two dozen" times. Eventually, Homstad informed Wright that if he did not leave then law enforcement would be called. It was at that point that Homstad recalled "order[ing]" Wright to leave.

As Homstad approached the front of the store, he recorded a video on his cell phone documenting the situation, and that video was admitted as part of exhibit 1. That video shows Wright lingering near the front entrance and Homstad approaching him. Homstad is heard saying, "This gentleman right here is refusing. He doesn't want to leave after I've asked him multiple times." Homstad then indicated that he was going to call law enforcement and report Wright for trespassing. Exhibit 1 also contained security camera footage from inside the store which shows

Homstad walking up to Wright and standing close to Wright with his hands behind his back. The video footage does not have audio, but Homstad testified that he again informed Wright that "he needed to leave the premises immediately."

Homstad testified that Wright was "very agitated," and "kept on calling [Homstad] names" like "gay," "fat," "pussy," and "big ogre." Homstad recalled that Wright "poked" him in the chest with a finger as the men exited the store. Homstad further testified that Wright "sucker punched" him in the stomach, at which point Homstad "dropped his arms" and asked if Wright had "lost his mind." As Homstad escorted Wright out of the door, the security camera footage shows Wright extending his left arm into Homstad's chest and losing his balance after making contact. Shortly thereafter, as both men fall out of view of the camera, Homstad's right arm drops to his side, just as he described doing after Wright "sucker punched" him. Homstad took a picture of Wright's vehicle and then called law enforcement to report the incident.

Another employee, Dalton Gregory, testified that he was stationed at the "print center" about 50 feet away from the front entrance to the store. Gregory did not initially notice Wright enter the store, but Wright eventually got his attention because Wright started speaking louder and in an "aggressive" manner. Gregory added that he got distracted by the encounter because he was concerned that the situation could escalate based on what he was seeing and hearing.

Finally, law enforcement officer, Brent Lovett, testified that he was dispatched to the Office Depot to investigate a report that an employee had been assaulted by a customer. Lovett interviewed Homstad, Pickrel, and Gregory at the store, and he made phone contact with Wright later that evening. Wright acknowledged that he got into an argument, but he denied assaulting Homstad. Lovett advised Wright that he would be cited for trespass and disturbing the peace, at which point Wright "got very upset and then ended the phone call." Lovett recalled that Wright started "cussing" and told Lovett that he "was worthless" and "an idiot."

After Lovett's testimony, the State rested. Wright moved to dismiss both charges, which motion was denied. Thereafter, Wright testified in his own defense. Wright testified that he was talking on the phone when he entered the store the first time, and Pickrel informed him that he could not shop without a mask. Contrary to Pickrel's testimony, Wright denied making any comments to Pickrel at that time, and he testified that he simply left the store. As discussed by the other witnesses, Wright then reentered the store and asked to speak with a manager. Wright recalled Homstad approaching the front of the store, but he denied having any conversation with Homstad prior to that point. In any case, Wright acknowledged that by the time Homstad approached the front of the store, his "verbal cues definitely suggested" that Wright leave the store. Wright further denied physically touching Homstad at any point during the incident.

After trial, the county court entered a written order finding Wright guilty on both charges. With respect to the charge of disturbing the peace, the court highlighted the security camera footage showing Wright "raise his left arm and extend it toward [Homstad]" which caused Wright "to stumble or lose his balance as his arm gets fully extended into [Homstad's] chest." The court credited Homstad's testimony that Wright "sucker punched him in the stomach" and called him a number of derogatory names, as well as testimony of both Homstad and Pickrel that the customer was scared to leave the store until Wright was gone. Altogether, the court concluded "it is clear to this court that [Wright] created a disturbance while at the Office Depot by refusing to wear a mask and becoming argumentative with the staff." With respect to the charge of trespassing, the court

emphasized evidence from Homstad's cell phone video documenting that Wright was "refusing to leave" after being asked to leave "multiple times."

The court sentenced Wright to pay $275 in fines plus court costs and fees. Wright appealed to the district court, challenging the sufficiency of the evidence against him on both charges and alleging two claims of ineffective assistance of trial counsel. The district court affirmed, and this appeal followed.

## ASSIGNMENTS OF ERROR

Wright failed to specifically raise any assignments of error on appeal to this court.

## STANDARD OF REVIEW

Both the district court and a higher appellate court generally review appeals from the county court for error appearing on the record. *State v. Dailey*, 314 Neb. 325, 990 N.W.2d 523 (2023). When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Id*. However, an appellate court independently reviews questions of law in appeals from the county court. *Id*.

In an appeal of a criminal conviction, we review the evidence in a light most favorable to the prosecution. *Id*.

In the absence of an assignment of error, the judgment will be affirmed, unless the court notes plain error on the record. *Haumont v. City of Lincoln*, 229 Neb. 52, 424 N.W.2d 892 (1988). An appellate court may find plain error on appeal when an error unasserted or uncomplained of at trial, but plainly evident from the record, prejudicially affects a litigant's substantial right and, if uncorrected, would result in damage to the integrity, reputation, and fairness of the judicial process. *State v. Childs*, 309 Neb. 427, 960 N.W.2d 585 (2021).

## ANALYSIS

While Wright failed to specifically raise any assignments of error, he generally argues that the district court erred in affirming his convictions on the grounds that the evidence against him was insufficient. When reviewing a criminal conviction for sufficiency of the evidence to sustain the conviction, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Branch*, 277 Neb. 738, 764 N.W.2d 867 (2009). In reviewing the evidence above, the district court found the evidence sufficient to sustain both of Wright's convictions. Finding no plain error in that conclusion, we affirm.

Wright further argues that his trial counsel was ineffective in multiple respects, however, we conclude that Wright's ineffective assistance of counsel claims are insufficiently alleged. See *State v. Mrza*, 302 Neb. 931, 926 N.W.2d 79 (2019) (assignments of error on direct appeal regarding ineffective assistance of trial counsel must specifically allege deficient performance, and appellate court will not scour remainder of brief in search of such specificity). Having failed to specifically assign any error, Wright also failed to specifically allege trial counsel's deficient

performance as required. Accordingly, we decline to address Wright's ineffective assistance claims on direct appeal.

## CONCLUSION

For the foregoing reasons, we affirm the order of the district court affirming Wright's convictions.

AFFIRMED.