Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
06/07/2022 08:08 AM CDT

State of Nebraska, appellee, v.
Richard L. Roebuck, appellant.
___ N.W.2d ___

Filed May 31, 2022.    No. A-21-342.

1. **Courts: Appeal and Error.** Both the district court and a higher appellate court generally review appeals from the county court for error appearing on the record.
2. **Judgments: Appeal and Error.** When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.
3. **Criminal Law: Courts: Appeal and Error.** When deciding appeals from criminal convictions in county court, an appellate court applies the same standards of review that it applies to decide appeals from criminal convictions in district court.
4. **Convictions: Appeal and Error.** A conviction in a bench trial of a criminal case is sustained if the evidence, viewed and construed most favorably to the State, is sufficient to support that conviction. The trial court's findings have the effect of a jury verdict and will not be set aside unless clearly erroneous.
5. **Rules of Evidence: Appeal and Error.** When the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, an appellate court reviews the admissibility of evidence for an abuse of discretion.
6. **Rules of Evidence: Hearsay: Appeal and Error.** Apart from rulings under the residual hearsay exception, an appellate court reviews for clear error the factual findings underpinning a trial court's hearsay ruling and reviews de novo the court's ultimate determination to admit evidence over a hearsay objection or exclude evidence on hearsay grounds.
7. **Sentences: Judgments: Appeal and Error: Words and Phrases.** Where a sentence imposed within the statutory limits is alleged on

appeal to be excessive, the appellate court must determine whether a sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed. Absent an abuse of discretion by the trial court, an appellate court will not disturb a sentence imposed within statutory limits. An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.

8. **Effectiveness of Counsel: Constitutional Law: Statutes: Records: Appeal and Error.** Whether a claim of ineffective assistance of trial counsel can be determined on direct appeal presents a question of law, which turns upon the sufficiency of the record to address the claim without an evidentiary hearing or whether the claim rests solely on the interpretation of a statute or constitutional requirement. An appellate court determines as a matter of law whether the record conclusively shows that (1) a defense counsel's performance was deficient or (2) a defendant was or was not prejudiced by a defense counsel's alleged deficient performance.

9. **Rules of Evidence: Hearsay.** For a statement to be an excited utterance, the following criteria must be met: (1) There must be a startling event; (2) the statement must relate to the event; and (3) the declarant must make the statement while under the stress of the event.

10. ____: ____. The justification for the excited utterance exception is that circumstances may produce a condition of excitement which temporarily stills the capacity for reflection and produces utterances free of conscious fabrication.

11. ____: ____. The true test in spontaneous exclamations is not when the exclamation was made, but whether under the circumstances of the particular exclamation, the speaker may be considered as speaking under the stress of nervous excitement and shock produced by the act in issue.

12. **Appeal and Error.** An alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court.

13. **Constitutional Law: Testimony.** The Confrontation Clause of the U.S. Constitution only applies to testimonial statements.

14. **Testimony: Words and Phrases.** The term "testimonial" applies to prior testimony at a preliminary hearing, before a grand jury, or at a former trial, and to police interrogations.

15. **Trial: Evidence: Appeal and Error.** An objection must be specifically stated, and on appeal, a defendant may not assert a different ground for his or her objection to the admission of evidence than was offered to the trier of fact.

16. **Convictions: Sentences: Ordinances: Appeal and Error.** When a defendant appeals a conviction and sentence under a municipal ordinance, claiming that the evidence is insufficient for a conviction and that a sentence is excessive, an appellate court's consideration of the assignments of error requires an examination of the specific ordinance involved.

17. **Jury Trials: Ordinances.** Neb. Rev. Stat. § 25-2705 (Reissue 2016) precludes a defendant from obtaining a jury trial in a prosecution for the violation of a municipal ordinance.

18. **Effectiveness of Counsel: Appeal and Error.** When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record.

19. **Effectiveness of Counsel: Records: Appeal and Error.** On direct appeal, the resolution of ineffective assistance of counsel claims turns upon the sufficiency of the record. In those cases where the record on direct appeal was sufficient to address a claim of ineffective assistance of trial counsel, the record itself either affirmatively proved or rebutted the merits of the claim. That is, the record established either that trial counsel's performance was not deficient, that the appellant could not establish prejudice, or that trial counsel's actions could not be justified as a part of any plausible trial strategy.

20. **Effectiveness of Counsel: Proof: Appeal and Error.** To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. To show prejudice, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different.

21. **Effectiveness of Counsel: Appeal and Error.** While an appellant is not required on direct appeal to allege prejudice when claiming ineffective assistance of trial counsel, an appellant must make specific allegations of trial counsel's deficient performance.

22. **Effectiveness of Counsel: Trial: Presumptions: Appeal and Error.** When reviewing claims of alleged ineffective assistance of counsel, trial counsel is afforded due deference to formulate trial strategy and tactics. There is a strong presumption that counsel acted reasonably, and an appellate court will not second-guess reasonable strategic decisions.

23. **Effectiveness of Counsel: Records: Appeal and Error.** Ineffective assistance claims on direct appeal must be presented with enough

particularity for (1) an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) a district court later reviewing a petition for postconviction relief to be able to recognize whether the claim was brought before the appellate court.

24. **Effectiveness of Counsel: Witnesses: Appeal and Error.** Appellate counsel must give on direct appeal the names or descriptions of any uncalled witnesses forming the basis of a claim of ineffective assistance of trial counsel. However, the appellate court does not need specific factual allegations as to what the person or persons would have said, which will not be found in the appellate record.

25. **Trial: Effectiveness of Counsel: Evidence: Appeal and Error.** An ineffective assistance of counsel claim will not be addressed on direct appeal if it requires an evidentiary hearing.

26. **Constitutional Law: Trial: Attorney and Client: Testimony: Waiver.** A defendant has a fundamental constitutional right to testify. The right to testify is personal to the defendant and cannot be waived by defense counsel's acting alone.

27. **Trial: Attorney and Client: Effectiveness of Counsel: Testimony: Waiver.** Defense counsel's advice to waive the right to testify can present a valid claim of ineffective assistance in two instances: (1) if the defendant shows that counsel interfered with his or her freedom to decide to testify or (2) if counsel's tactical advice to waive the right was unreasonable.

Appeal from the District Court for Lancaster County, Kevin R. McManaman, Judge, on appeal thereto from the County Court for Lancaster County, Matthew L. Acton, Judge. Judgment of District Court affirmed.

Robert Wm. Chapin, Jr., for appellant.

Douglas J. Peterson, Attorney General, and Siobhan E. Duffy for appellee.

Pirtle, Chief Judge, and Riedmann and Bishop, Judges.

Pirtle, Chief Judge.

## INTRODUCTION

Richard L. Roebuck appeals from an order of the Lancaster County District Court affirming his conviction

and sentence for assault and battery in violation of Lincoln Mun. Code § 9.12.010 (1997). For the reasons that follow, we affirm.

## BACKGROUND

On December 2, 2019, the State filed a criminal complaint against Roebuck in the county court for Lancaster County, alleging one count of third degree domestic assault in violation of Neb. Rev. Stat. § 28-323(1) and (4) (Reissue 2016). On December 18, the State filed an amended complaint alleging one count of assault and battery in violation of Lincoln Mun. Code § 9.12.010. Roebuck pled not guilty to the amended complaint, and the matter was set for a bench trial.

The matter proceeded to a bench trial on February 27, 2020, wherein the following evidence was adduced: At approximately 6:30 a.m. on November 28, 2019, F.P. was roused awake by his mother to find a woman screaming for help outside of their house on North 28th Street in Lincoln, Nebraska. According to F.P., the woman was crying and shaking, and he observed that she kept "looking back over her shoulder." F.P. heard the woman say "'[m]y boyfriend hit me.'" Roebuck objected to this testimony on hearsay grounds, and the court overruled that objection. F.P. let the woman inside the house and instructed his sister to call the police. The woman continued "shaking and crying" and indicated she was experiencing pain in her ribs. F.P. recalled that the woman said something about a preexisting injury to her ribs which was aggravated because "he had hit her in the ribs."

F.P.'s sister called the 911 emergency dispatch service, and a recording of the call was admitted into evidence. Within the first 30 seconds of the recording, a woman's voice is heard in the background saying either "he was hitting me, punching me" or "he was kicking me, punching me." F.P. testified that the voice heard in the background is that of the woman he discovered outside the house. Roebuck objected to the admission of this evidence on both hearsay and confrontation

grounds. With respect to hearsay, the court stated that "foundation for excited utterance has been established." With respect to confrontation, the court agreed that much of the recorded call consisted of testimonial responses to the 911 operator's questions. However, the court admitted the statement above as nontestimonial because it was not prompted by any question from the 911 operator.

Within approximately 10 minutes of the 911 call, Lincoln police officers arrived on the scene. Officer Zack Sanchez testified that he arrived at the residence on North 28th Street and made contact with the victim. Sanchez observed her sitting on the couch, and he testified that "[s]he looked to be actively upset, and her demeanor showed signs that she may be in some sort of fear." After entering the house, but prior to making contact with the victim, Sanchez testified that he overheard her "telling the individuals who lived there what was going on." Specifically, Sanchez testified that he heard the victim say she and her boyfriend "had gotten into an argument, which led to him being aggressive and grabbed her, which led her to come over across the street." Roebuck objected to this testimony on hearsay and foundation grounds, and the court overruled that objection.

Sanchez testified that he eventually introduced himself and began speaking with the victim, at which point he noticed a small cut on her head. Sanchez observed that she was speaking in a "trembling manner, like she was fearful." Sanchez also testified that he observed minor swelling on the victim's head and a bruise "which grew increasingly darker as the conversation went on." Based on his experience with simple bruising and swelling, Sanchez testified that her injuries appeared to be recent.

After trial, on February 28, 2020, the court found Roebuck guilty on one count of assault and battery in violation of Lincoln Mun. Code § 9.12.010 and ordered a presentence investigation. The court reconvened for sentencing on May 1, but the matter was continued to allow Roebuck an

opportunity to enroll in domestic violence classes. The court reconvened again on June 19, but the matter was once again continued in light of a broadcast for Roebuck's arrest in connection with a "felony domestic-related assault." The court reconvened again on June 26, at which point Roebuck was in custody on a felony charge. The court ultimately sentenced Roebuck to the maximum term of 6 months in the county jail.

Roebuck appealed to the district court for Lancaster County, assigning that the county court erred in (1) admitting statements of the victim through Sanchez over hearsay objections, (2) admitting statements of the victim through Sanchez over confrontation objections, (3) admitting statements of the victim through F.P. over hearsay objections, (4) finding Roebuck guilty without sufficient evidence, and (5) imposing an excessive sentence. Roebuck also assigned that his trial counsel was ineffective in a number of respects. Upon reviewing the record and hearing argument, the district court affirmed Roebuck's conviction and sentence. This appeal followed.

## ASSIGNMENTS OF ERROR

Roebuck assigns, restated, that the district court erred in (1) affirming the county court's admission of statements of the victim through Sanchez over hearsay objections, (2) affirming the county court's admission of statements of the victim through Sanchez over confrontation objections, (3) affirming the county court's admission of statements of the victim through F.P. over hearsay objections, (4) affirming the county court's finding of guilt without sufficient evidence, (5) affirming the county court's imposition of an excessive sentence, and (6) failing to find that Roebuck was entitled to a jury trial.

Additionally, Roebuck assigns that his trial counsel was ineffective for (1) failing to call all known witnesses, (2) failing to object on grounds of confrontation to statements made by the victim admitted through the testimony of Sanchez, (3) failing to fully and completely cross-examine Sanchez,

(4) failing to fully and completely cross-examine Officer Thomas Domanski, (5) failing to fully and completely cross-examine F.P., (6) failing to properly advise Roebuck on the decision whether to testify at trial, and (7) failing to object to the amended complaint.

## STANDARD OF REVIEW

[1-3] Both the district court and a higher appellate court generally review appeals from the county court for error appearing on the record. *State v. Collins*, 307 Neb. 581, 950 N.W.2d 89 (2020). When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Id.* When deciding appeals from criminal convictions in county court, we apply the same standards of review that we apply to decide appeals from criminal convictions in district court. *Id.*

[4] A conviction in a bench trial of a criminal case is sustained if the evidence, viewed and construed most favorably to the State, is sufficient to support that conviction. *State v. Hansen*, 252 Neb. 489, 562 N.W.2d 840 (1997). The trial court's findings have the effect of a jury verdict and will not be set aside unless clearly erroneous. *Id.*

[5,6] When the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, an appellate court reviews the admissibility of evidence for an abuse of discretion. *State v. Childs*, 309 Neb. 427, 960 N.W.2d 585 (2021). Apart from rulings under the residual hearsay exception, an appellate court reviews for clear error the factual findings underpinning a trial court's hearsay ruling and reviews de novo the court's ultimate determination to admit evidence over a hearsay objection or exclude evidence on hearsay grounds. *Id.*

[7] Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether a sentencing court abused its discretion

in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed. *State v. Collins, supra*. Absent an abuse of discretion by the trial court, an appellate court will not disturb a sentence imposed within statutory limits. *Id.* An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id.*

[8] Whether a claim of ineffective assistance of trial counsel can be determined on direct appeal presents a question of law, which turns upon the sufficiency of the record to address the claim without an evidentiary hearing or whether the claim rests solely on the interpretation of a statute or constitutional requirement. *Id.* We determine as a matter of law whether the record conclusively shows that (1) a defense counsel's performance was deficient or (2) a defendant was or was not prejudiced by a defense counsel's alleged deficient performance. *Id.*

## ANALYSIS

*Hearsay.*

Roebuck's first and third assignments of error allege that the district court erred in affirming the county court's admission of statements allegedly made by the victim over hearsay objections. Because the victim failed to appear for trial, despite being ordered to do so, the State sought to introduce certain statements allegedly made by her through the testimony of other witnesses.

Chronologically, the first statement made by the victim and admitted at trial occurred outside the North 28th Street residence when F.P. made contact with the victim, who was then screaming for help. F.P. testified the victim stated that "'[m]y boyfriend hit me.'" The second statement made by the victim and admitted at trial occurred shortly after F.P. let her into the house. F.P.'s sister called 911, and within the first 30 seconds of the recorded call, a woman's voice is heard in

the background saying either "he was hitting me, punching me" or "he was kicking me, punching me." The third statement made by the victim and admitted at trial occurred approximately 10 minutes after the 911 call when Sanchez arrived at the residence. Sanchez testified that he overheard her telling the other individuals in the house that she and her boyfriend "had gotten into an argument, which led to him being aggressive and grabbed her, which led her to come over across the street." Roebuck objected to each of these statements on hearsay grounds.

Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Neb. Rev. Stat. § 27-801 (Cum. Supp. 2020). Hearsay is not admissible except as provided by the Nebraska Evidence Rules, other rules adopted by the statutes of the State of Nebraska, or by the discovery rules of the Nebraska Supreme Court. See Neb. Rev. Stat. § 27-802 (Reissue 2016). There is an exception to the hearsay rule when the statement offered was related to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition. See Neb. Rev. Stat. § 27-803(1) (Reissue 2016).

[9-11] The statements in question clearly contain hearsay. The county court admitted each of the statements under the excited utterance exception, and the district court affirmed. For a statement to be an excited utterance, the following criteria must be met: (1) There must be a startling event; (2) the statement must relate to the event; and (3) the declarant must make the statement while under the stress of the event. *State v. Hale*, 290 Neb. 70, 858 N.W.2d 543 (2015). The justification for the excited utterance exception is that circumstances may produce a condition of excitement which temporarily stills the capacity for reflection and produces utterances free of conscious fabrication. *Id.* The true test in spontaneous exclamations is not when the exclamation was made, but whether under the circumstances of the particular exclamation, the

speaker may be considered as speaking under the stress of nervous excitement and shock produced by the act in issue. *State v. Hembertt*, 269 Neb. 840, 696 N.W.2d 473 (2005).

Roebuck does not contest that a startling event occurred or that the statements at issue related to that startling event. Rather, Roebuck asserts that "there was insufficient evidence presented to identify whether the time had dissipated between the event and the offered statement." Brief for appellant at 14. Roebuck acknowledges the evidence of the victim's apparent distress. However, he argues "the biggest piece missing under the excited utterance scrutiny is the lack of a timeframe." *Id*. at 23. Roebuck asserts "there is no evidence presented as a time frame to identify whether the complaining witness had time for conscious thought." *Id*. at 21.

With regard to the first statement made to F.P. from outside the residence, Roebuck argues that "[v]ague statements identifying an event, i.e. 'My boyfriend hit me,' without more fail to provide enough information to determine if the statement is an excited utterance." *Id*. at 23. Specifically, Roebuck contends that "[t]he boyfriend could have allegedly hit [the victim] a week ago, a month ago, or perhaps not at all and an entirely different event occurred." *Id*. Roebuck also questions the spontaneity of the statement, asserting that F.P. prompted the statement through his questions as he was trying to ascertain why the victim was screaming outside his door.

With regard to the second statement overheard on the 911 call, Roebuck asserts:

> [T]here could have been plenty of time for the stress from a startling event to dissipate . . . . [The victim] had time to leave the home, go across the street, knock on the door, and wait to be allowed in, and be seated on the couch all prior to making the statement.

Brief for appellant at 21. With regard to the third statement overheard by Sanchez upon arriving at the residence, Roebuck acknowledges Sanchez' testimony establishing a 10-minute timeframe between the 911 call and his arrival.

However, Roebuck argues that "the call for 911 is still not indicative of the time of the alleged incident," noting that "[p]eople can call the police for assistance with reports of a belated incident." *Id*. at 14.

In affirming the county court's admission of the above statements, the district court reasoned as follows:

> The victim fled across the street at six-thirty in the morning and was found screaming at [F.P.'s] front door. While no one described the "exact timeline" of the assault, she was observed to be crying and screaming and appeared distressed to [F.P.], and was actively upset in a "trembling manner, like she was fearful," even after Officer Sanchez arrived. Her statements pertained to her argument with [Roebuck], that he had grabbed and hit her, and she was clearly still under the influence of the event before and even after Sanchez arrived ten minutes later. The statements fall squarely within the excited utterance exception to the hearsay rule.

We agree. Roebuck effectively concedes that there was some startling event which caused the victim to flee across the street screaming for help. Rather than disputing the occurrence of a startling event in the first place, Roebuck argues that there could have been sufficient time between such event and the statements at issue for the exciting influence to dissipate. However, the evidence is to the contrary.

When the victim made the first statement to F.P. outside his door, she was frantic. F.P. testified she was shaking, crying, and looking back over her shoulder when she stated that "'[m]y boyfriend hit me.'" This prompted F.P. to let the victim inside the house, at which point her trembling voice is heard in the background of the 911 call saying either "he was hitting me, punching me" or "he was kicking me, punching me." Sanchez testified that he arrived on the scene approximately 10 minutes later, at which point the vitim still appeared to Sanchez to be "actively upset." Sanchez overheard the victim say to the other individuals in the house that she and

her boyfriend "had gotten into an argument, which led to him being aggressive and grabbed her, which led her to come over across the street." Thereafter, Sanchez spoke with the victim and noted that she was speaking in a "trembling manner, like she was fearful."

The record reflects that a startling event occurred involving Roebuck and the victim, which event caused the victim to flee across the street screaming for help. In the minutes following this event, the victim made the three statements above, all of which pertain to the startling event that occurred. Despite Roebuck's assertions to the contrary, the victim appeared at all pertinent times to be under the exciting influence of the startling event that occurred between her and Roebuck. Accordingly, we affirm the order of the district court affirming the county court's admission of these statements under the excited utterance exception to the hearsay rule.

*Confrontation.*

[12] Roebuck's second assignment of error alleges the district court erred in affirming the county court's admission of the third statement above through Sanchez over a confrontation objection. We note that Roebuck also makes a confrontation argument with regard to the statement heard in the background of the 911 call; however, that argument does not correspond to any assignment of error, and thus, we do not address it. See *State v. Figures*, 308 Neb. 801, 957 N.W.2d 161 (2021) (alleged error must be both specifically assigned and specifically argued in brief of party asserting error to be considered by appellate court).

[13,14] The Confrontation Clause provides, in relevant part, that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." U.S. Const. amend. VI. This admonition only applies to testimonial statements, as "[o]nly statements of this sort cause the declarant to be a 'witness' within the meaning of the Confrontation Clause." *Davis v. Washington*, 547 U.S.

813, 821, 126 S. Ct. 2266, 165 L. Ed. 2d 224 (2006) (quoting *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004)). "'"[W]hatever else the term ['testimonial'] covers, it applies . . . to prior testimony at a preliminary hearing, before a grand jury, or at a former trial, and to police interrogations."'" *State v. Vaught*, 268 Neb. 316, 325, 682 N.W.2d 284, 291 (2004) (quoting *Horton v. Allen*, 370 F.3d 75 (1st Cir. 2004)).

[15] While Roebuck does specifically assign and argue the alleged error with regard to the admission of the statement overheard by Sanchez, the State counters that Roebuck failed to preserve the matter for appeal because he failed to specifically object on confrontation grounds when Sanchez testified to the statement. We agree. An objection must be specifically stated, and on appeal, a defendant may not assert a different ground for his or her objection to the admission of evidence than was offered to the trier of fact. *State v. Childs*, 309 Neb. 427, 960 N.W.2d 585 (2021).

In this case, Roebuck failed to specifically raise a confrontation objection when Sanchez testified to the statement which he overheard upon arriving at the residence. Roebuck had previously objected to the expected testimony on confrontation grounds, and the court requested the State to "clarify the foundation for *Crawford* with the officer." The State thus laid additional foundation establishing that when Sanchez walked into the house, "it was slightly chaotic," and the statement at issue was overheard by Sanchez prior to his making contact with the victim or prompting her with questions. The State again asked Sanchez to testify to the statement he overheard, which prompted an objection as to hearsay and foundation, which the court overruled. Roebuck failed to reiterate his confrontation objection.

Asserting that the admitted statement was testimonial, Roebuck emphasizes that the victim "made the statement with the neighbors while the police officer was present." Brief for appellant at 18. Thus, the apparent concern prompting the

initial objection on confrontation grounds was that the statement was made in response to police interrogation. Indeed, the court noted in response to Roebuck's initial confrontation objection that it was unclear whether the statement was in response to a question. The State then laid additional foundation to demonstrate that the statement was not made in response to a police interrogation. If Roebuck still believed that the State had failed to lay sufficient foundation to prove the statement was not testimonial, then he should have specifically reiterated his confrontation objection at that point. Because he did not, we conclude Roebuck failed to preserve that issue for appeal and decline to address his second assignment of error.

*Sufficiency of Evidence.*

[16] Roebuck's fourth assignment of error alleges that the district court erred in affirming the county court's finding of guilt without sufficient evidence. When a defendant appeals a conviction and sentence under a municipal ordinance, claiming that the evidence is insufficient for a conviction and that a sentence is excessive, an appellate court's consideration of the assignments of error requires an examination of the specific ordinance involved. *State v. King*, 239 Neb. 853, 479 N.W.2d 125 (1992). Roebuck was charged with violating Lincoln Mun. Code § 9.12.010, which provides as follows:

> a. It shall be unlawful for any person intentionally or knowingly to:
>
> 1. Threaten another in a menacing manner; or
> 2. Attempt to strike another person; or
> 3. Place another person in fear or apprehension of imminent bodily harm.
>
> b. It shall be unlawful for any person intentionally, knowingly, or recklessly to:
>
> 1. Cause bodily injury to another person; or
> 2. Strike another person.

The present case is analogous to *State v. Thompson*, 278 Neb. 320, 770 N.W.2d 598 (2009), wherein the defendant

was similarly charged with assault in violation of Lincoln Mun. Code § 9.12.010. In *Thompson*, the defendant challenged the sufficiency of the evidence based on the State's failure to adduce testimony from the alleged victim. Rejecting the defendant's claim, the Supreme Court observed as follows:

> [The defendant] does not provide any case law to support his claim that the evidence was insufficient because the alleged victim did not testify. There is no statute requiring a victim to testify in a criminal case. This court must review only whether the evidence was sufficient. In so doing, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. . . . The county court heard and observed the witnesses and was able to assess their credibility, and it found sufficient evidence to convict [the defendant] of violating the municipal code.

*State v. Thompson*, 278 Neb. at 329, 770 N.W.2d at 607 (citation omitted). Roebuck likewise argues that the best indication of the insufficiency of the evidence in this case "is the complete lack of testimony directly from the complaining witness herself." Brief for appellant at 26. However, like in *Thompson*, Roebuck fails to provide any case law or statute to support this argument.

In affirming the county court's conviction of Roebuck, the district court reasoned that "[t]he evidence, viewed in the light most favorable to the prosecution, established facts sufficient for the trier of fact to find [Roebuck] guilty beyond a reasonable doubt." We agree. The evidence is that there was an argument between the victim and Roebuck. Roebuck became aggressive, which prompted the victim to flee across the street. As previously discussed, the county court properly admitted statements of the victim which tend to demonstrate that Roebuck hit and punched her prior to her fleeing. F.P.

testified that the victim appeared to have an injury to her ribs. Moreover, Sanchez observed a cut on her head, as well as swelling and a bruise which appeared to be recent. Altogether, the evidence is sufficient to establish guilt beyond a reasonable doubt, and Roebuck's fourth assignment of error is without merit.

*Excessive Sentence.*

Roebuck's fifth assignment of error alleges that the district court erred in affirming the county court's imposition of an excessive sentence. Lincoln Mun. Code § 1.24.010 (2006) provides as follows:

> Any person . . . who shall violate any of the provisions of this code for which a penalty is not otherwise specifically provided shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be punished by imprisonment in the county jail for a period not to exceed six months, or by a fine of not to exceed $500.00, recoverable with costs, or both.

The county court sentenced Roebuck to the maximum 6 months in county jail and ordered that he pay the costs of the prosecution. The court cited Roebuck's "lengthy criminal history," revocation from probation in 2015, lack of remorse, and high risk to reoffend. Moreover, the court noted that Roebuck was in custody on a "felony domestic charge," adding that "[w]hile he is presumed innocent of that charge . . . [i]t does, however, go into my consideration in determining whether or not to place him on probation."

In affirming the sentence imposed by the county court, the district court observed that "[t]he record reflects the [county] court considered the relevant factors when imposing the sentence which was within the statutory limits" and that "[t]he sentencing court's reasons reflected [Roebuck's] significant criminal history, including a prior conviction for domestic assault." The district court ultimately concluded that "[c]onsidering the relevant factors including [Roebuck's]

violent history and the nature of the crime, the [county] court's sentence . . . was not an abuse of discretion." We agree.

On appeal, Roebuck acknowledges the relevant factors considered by the county court. However, Roebuck argues the court failed to account for certain mitigating factors, in that he "had started domestic violence classes, has positive relationships with his children, his own experience as the victim of physical abuse/neglect, and [his] prior military experience." Brief for appellant at 28. However, each of these factors were included in the presentence investigation report, which the court reviewed prior to sentencing. Based on our review of the record, the sentence by the county court was not an abuse of discretion. Accordingly, the district court did not err in affirming the county court's sentence, and Roebuck's fifth assignment of error is without merit.

*Right to Jury Trial.*

Roebuck's sixth assignment of error alleges that the district court erred by not finding that Roebuck was entitled to a jury trial. Roebuck emphasizes that he was originally charged with third degree domestic assault in violation of § 28-323(1) and (4) and that the matter was set for a jury trial. Thereafter, the State amended the charge to a violation of a Lincoln municipal ordinance, and the matter was set for a bench trial. Roebuck argues it was plain error for the county court to set the matter for a bench trial without first obtaining a waiver of jury trial.

[17] On appeal to the district court, Roebuck likewise argued that the amended complaint "'stripped' him of a 'right' to a jury trial." However, the district court reasoned that "[o]f course, [Roebuck] had no right to a jury trial with the charge he was tried under, and it could have been brought as that in the first place, so no right was 'stripped' of him." Indeed, Roebuck was ultimately charged with violating a Lincoln municipal ordinance. Under Neb. Rev. Stat. § 25-2705 (Reissue 2016), "Either party to any case in county court,

*except criminal cases arising under city or village ordinances
. . .* may demand a trial by jury." (Emphasis supplied.) Thus,
Roebuck was not entitled to a jury trial. See *State v. Cozzens*,
241 Neb. 565, 490 N.W.2d 184 (1992) (holding § 25-2705
precludes defendant from obtaining jury trial in prosecution
for violation of municipal ordinance). His sixth assignment of
error is without merit.

*Ineffective Assistance of Counsel.*

[18,19] Finally, Roebuck assigns, through new counsel,
seven ways in which his trial counsel was ineffective. When
a defendant's trial counsel is different from his or her counsel
on direct appeal, the defendant must raise on direct appeal any
issue of trial counsel's ineffective performance which is known
to the defendant or is apparent from the record. *State v. Filholm*,
287 Neb. 763, 848 N.W.2d 571 (2014). On direct appeal, the
resolution of ineffective assistance of counsel claims turns
upon the sufficiency of the record. *Id.* In those cases where
the record on direct appeal was sufficient to address a claim
of ineffective assistance of trial counsel, the record itself
either affirmatively proved or rebutted the merits of the claim.
*Id.* That is, the record established either that trial counsel's
performance was not deficient, that the appellant could not
establish prejudice, or that trial counsel's actions could not be
justified as a part of any plausible trial strategy. *Id.*

[20-22] To prevail on a claim of ineffective assistance of
counsel under *Strickland v. Washington*, 466 U.S. 668, 104
S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must
show that his or her counsel's performance was deficient and
that this deficient performance actually prejudiced the defend-
ant's defense. *State v. Filholm, supra*. To show prejudice, the
defendant must demonstrate a reasonable probability that but
for counsel's deficient performance, the result of the proceed-
ing would have been different. *Id.* While an appellant is not
required on direct appeal to allege prejudice when claim-
ing ineffective assistance of trial counsel, an appellant must

make specific allegations of trial counsel's deficient performance. See *id.* When reviewing claims of alleged ineffective assistance of counsel, trial counsel is afforded due deference to formulate trial strategy and tactics. *State v. Huston*, 285 Neb. 11, 824 N.W.2d 724 (2013). There is a strong presumption that counsel acted reasonably, and an appellate court will not second-guess reasonable strategic decisions. *Id.*

Roebuck first alleges that trial counsel was ineffective for failing to call all known witnesses. Specifically, Roebuck argues trial counsel should have called the mother and sister of F.P., who were also present at the residence on North 28th Street on the morning in question. Roebuck asserts that "[t]hese witnesses could provide additional or different evidence" and identify any inconsistencies in the testimony of the witnesses that did testify. Brief for appellant at 32. Additionally, Roebuck asserts that trial counsel "failed to call any other neighbors," whose testimony "could have also identified any inconsistencies" in the other testimony. *Id*. at 33.

In rejecting this claim, the district court observed that "no factual basis is offered for the assertion that such testimony would be forthcoming from those people," adding that "[i]t is well-established that failure to call all potential witnesses is not evidence of ineffective practice by a lawyer, nor is there any basis to believe not doing so was prejudicial." In its brief to this court, the State argues that "Roebuck has failed to allege what the testimony of these witnesses would have been, and this lack of specificity deprives this Court of the ability to determine if the record is sufficient to address the matter on direct appeal. Brief for appellee at 25. Alternatively, the State argues that the claim "has not been stated with sufficient specificity to preserve it." *Id*.

[23,24] In *State v. Abdullah*, 289 Neb. 123, 133, 853 N.W.2d 858, 866 (2014), the Supreme Court clarified that ineffective assistance claims on direct appeal must be presented "with enough particularity for (1) an appellate court to make a determination of whether the claim can be decided upon the

trial record and (2) a district court later reviewing a petition for postconviction relief to be able to recognize whether the claim was brought before the appellate court." In *Abdullah*, the court found that the alleged failure to call "'at least two' witnesses" was not sufficiently specific in light of the court's concern that a potential postconviction court would be unable "to identify if a particular failure to call a witness claim is the same one that was raised on direct appeal." 289 Neb. at 133, 134, 853 N.W.2d at 867. The court has since held that "[a]ppellate counsel must give on direct appeal the names or descriptions of any uncalled witnesses forming the basis of a claim of ineffective assistance of trial counsel." *State v. Lee*, 304 Neb. 252, 282, 934 N.W.2d 145, 166 (2019). However, the appellate court does not need specific factual allegations as to what the person or persons would have said, which will not be found in the appellate record. *State v. Blake*, 310 Neb. 769, 969 N.W.2d 399 (2022). But see, *State v. Hill*, 298 Neb. 675, 905 N.W.2d 668 (2018); *State v. Ash*, 293 Neb. 583, 878 N.W.2d 569 (2016).

In both *Hill* and *Ash*, the appellant raised on direct appeal a claim of ineffective assistance of counsel for the failure to adduce evidence from certain witnesses. In both cases, the Supreme Court emphasized that the appellant had failed to allege what the testimony of the uncalled witnesses would have been. See, *State v. Hill, supra* (in order to avoid dismissal without evidentiary hearing, defendant is required to specifically allege what testimony of these witnesses would have been); *State v. Ash, supra* (defendant does not explain what information uncalled witness possessed or what part of defendant's testimony would have been corroborated). In both cases, the court held that the claim had not been alleged with sufficient particularity to preserve it for later postconviction relief. Moreover, both cases cited *Abdullah* for the proposition that specific allegations as to the substance of the omitted testimony are required to achieve the requisite particularity on direct appeal.

However, in *Abdullah*, the court stated, "Our case law is clear that *were this a motion for postconviction relief*, [the defendant] would be required to specifically allege what the testimony of these witnesses would have been if they had been called in order to avoid dismissal without an evidentiary hearing." 289 Neb. at 133, 853 N.W.2d at 867 (emphasis supplied). Immediately thereafter, the court added that "[i]n a direct appeal, we do not need specific factual allegations as to who should have been called or what that person or persons would have said to be able to conclude that any evidence of such alleged ineffective assistance will not be found in the trial record." *Id.* Nevertheless, the court held that the lack of any specificity as to the uncalled witnesses was concerning for purposes of preserving a postconviction claim. Thus, *Abdullah* drew a sharp distinction between the level of particularity required to preserve a claim on direct appeal and the level of particularity required to justify an evidentiary hearing on a motion for postconviction relief.

[25] In the vast majority of cases, the purported testimony of an uncalled witness will not appear in the appellate record. Rather, whether the failure to call a witness amounted to ineffective assistance of counsel will most likely require an evidentiary hearing, "[a]nd an ineffective assistance of counsel claim will not be addressed on direct appeal if it requires an evidentiary hearing." *State v. Filholm*, 287 Neb. 763, 771, 848 N.W.2d 571, 579 (2014). As discussed in *Abdullah*, specific allegations as to the purported testimony of an uncalled witness would be required for a postconviction court to determine whether an evidentiary hearing is justified. However, on direct appeal, the fundamental question is whether a claim is raised with sufficient particularity for a postconviction court to "identify whether a particular claim of failing to investigate a witness is the same one that was raised on direct appeal." *State v. Blake*, 310 Neb. 769, 799, 969 N.W.2d 399, 421 (2022). Accordingly, *Hill* and *Ash* notwithstanding, "When the claim of ineffective assistance on direct appeal

involves uncalled witnesses . . . [i]t is sufficient that appellate counsel give on direct appeal the names or descriptions of any uncalled witnesses forming the basis of a claim of ineffective assistance of trial counsel." *State v. Blake*, 310 Neb. at 798-99, 969 N.W.2d at 421. See, also, *State v. Lee*, 304 Neb. 252, 934 N.W.2d 145 (2019).

In this case, Roebuck sufficiently identified the mother and sister of F.P. as potential witnesses that trial counsel failed to call at trial. Thus, we find that portion of Roebuck's claim was raised with sufficient particularity. However, we find that the vague assertion as to the failure to call "any other neighbors" is too broad and indefinite to permit a potential postconviction court to identify whether a later claim to any particular "neighbor" was the same claim raised on direct appeal. See brief for appellant at 33. Accordingly, we reject Roebuck's claim of deficient performance as to the failure to call unnamed neighbors.

With regard to trial counsel's failure to call as witnesses F.P.'s mother and sister, we agree with the State that the record is not sufficient to address this claim on direct appeal. The decision not to call additional witnesses was a matter of trial strategy, which, if reasonable, will not be second-guessed on appeal. However, there is nothing in the record to establish whether the failure to call F.P.'s mother and sister was a conscious choice of trial strategy. See *State v. Huston*, 285 Neb. 11, 824 N.W.2d 724 (2013) (finding record insufficient where there was no evidence that would allow court to determine whether failure to object to evidence was conscious choice of trial strategy). Moreover, even if such was a conscious choice of trial strategy, there is nothing in the record to support Roebuck's assertion that F.P.'s mother and sister could have supplied additional or different evidence, let alone what that evidence would have been. Accordingly, we conclude the trial record is insufficient to address Roebuck's first claim of ineffective assistance on direct appeal.

Roebuck next assigns that trial counsel was ineffective for failing to object on grounds of confrontation to statements made by the victim and admitted through the testimony of Sanchez. As discussed above, Roebuck initially objected on confrontation grounds to the anticipated testimony of Sanchez regarding the statement he overheard upon arrival at the North 28th Street residence; however, Roebuck failed to reiterate his confrontation objection after the State laid additional foundation for the testimony. We conclude that this alleged deficiency of trial counsel is without merit insofar as Roebuck cannot demonstrate prejudice because the statement overheard by Sanchez prior to making contact with the victim or prompting her with questions was not testimonial and thus would not have been excluded even if Roebuck had properly raised a confrontation objection.

Roebuck next assigns that trial counsel was ineffective for failing to fully and completely cross-examine Sanchez, Domanski, and F.P. We note that Roebuck also presents an argument that trial counsel was ineffective for failing to object on hearsay and confrontation grounds to certain statements to which F.P. testified. However, such argument does not correspond to any assignment of error, and thus, we do not address it. See *State v. Figures*, 308 Neb. 801, 957 N.W.2d 161 (2021).

Roebuck argues that trial counsel failed to adequately cross-examine Sanchez on his qualifications and the basis for his opinion that the victim's injuries appeared recent. Roebuck argues trial counsel similarly failed to adequately cross-examine Domanski on his knowledge of bruising, which testimony "could have refuted . . . Sanchez's testimony." Brief for appellant at 36. Roebuck argues trial counsel failed to adequately cross-examine F.P. on the basis for his testimony regarding the injury to the victim's ribs.

In rejecting these claims, the district court reasoned that they "are simply disagreements with the trial tactics employed by his lawyer, and nothing appears deficient resulting in

any prejudice within the meaning of *Strickland v. Washington*."
We agree. We are guided by the strong presumption that
trial counsel acted reasonably, and an appellate court will
not second-guess reasonable strategic decisions. See *State v.
Huston,* supra. Moreover, even if trial counsel was deficient,
Roebuck cannot show prejudice, because the evidence of the
victim's statements and the photographs of her injuries did
not depend on trial counsel's cross-examination of these wit-
nesses. Accordingly, we conclude that Roebuck's third, fourth,
and fifth claims of ineffective assistance of counsel are with-
out merit.

[26,27] Roebuck next assigns that trial counsel was ineffec-
tive for failing to properly advise him on the decision whether
to testify at trial. Roebuck did not testify at trial. A defend-
ant has a fundamental constitutional right to testify. *State v.
Johnson*, 298 Neb. 491, 904 N.W.2d 714 (2017). The right to
testify is personal to the defendant and cannot be waived by
defense counsel's acting alone. *Id.* Defense counsel's advice
to waive the right to testify can present a valid claim of inef-
fective assistance in two instances: (1) if the defendant shows
that counsel interfered with his or her freedom to decide to
testify or (2) if counsel's tactical advice to waive the right was
unreasonable. *Id.*

We observe that the county court explicitly advised Roebuck
as to his right to testify and asked Roebuck, "Have you had
enough time to speak with [trial counsel] about both your right
to testify and your right not to testify?" Roebuck responded,
"Yes, sir." Thereafter, the court confirmed with Roebuck that
he was choosing not to testify freely, voluntarily, knowingly,
and intelligently. However, while the record affirmatively
establishes that Roebuck chose not to testify, there is no evi-
dence as to the substance of trial counsel's advice on that point.
Accordingly, we conclude the record is insufficient to address
this claim on direct appeal. See, *State v. Hill*, 298 Neb. 675,
905 N.W.2d 668 (2018); *State v. Mora*, 298 Neb. 185, 903

N.W.2d 244 (2017); *State v. Alvarado*, 27 Neb. App. 334, 931 N.W.2d 463 (2019).

Finally, Roebuck assigns that trial counsel was ineffective for failing to object to the amended complaint. Roebuck argues that counsel's failure to object resulted in the loss of his right to a jury trial. However, as discussed above, Roebuck had no right to a jury trial under the amended charges, and the State could have originally charged Roebuck under the amended complaint. In rejecting this claim, the district court pointed out that the amended complaint actually reduced the possible penalty which Roebuck faced, adding that "[t]here is no merit to the argument that an objection effectively demanding a charge with double the penalty should or even *could* be granted by a Court, and were any such objection sustained, the [S]tate could simply have dismissed and refiled." (Emphasis in original.) We agree. Accordingly, we conclude the record affirmatively establishes that trial counsel was not ineffective for failing to object to the amended complaint.

## CONCLUSION

For the foregoing reasons, we affirm the order of the district court affirming Roebuck's conviction and sentence for assault and battery in violation of Lincoln Mun. Code § 9.12.010. Additionally, we conclude the appellate record is insufficient to determine whether trial counsel was ineffective for failing to call as witnesses the mother and sister of F.P. and for failing to properly advise Roebuck on his right to testify. With regard to the remaining claims of ineffective assistance, we conclude the record affirmatively establishes either that trial counsel was not ineffective or that Roebuck cannot show prejudice.

AFFIRMED.