IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. BLANCO

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

MARIO BLANCO, APPELLANT.

Filed December 5, 2023.    No. A-23-251.

Appeal from the District Court for Scotts Bluff County: LEO P. DOBROVOLNY, Judge. Affirmed.

Paul A. Payne, Deputy Scotts Bluff County Public Defender, for appellant.

Michael T. Hilgers, Attorney General, and P. Christian Adamski for appellee.

PIRTLE, Chief Judge, and MOORE and ARTERBURN, Judges.

MOORE, Judge.

## INTRODUCTION

Mario Blanco appeals his conviction in the district court for Scotts Bluff County of first degree sexual assault of a child. Blanco argues that the district court erred in allowing a witness to testify about out-of-court statements made by the alleged victim. The court overruled Blanco's hearsay objection on the grounds that the statements were excited utterances. For the following reasons, we affirm.

## STATEMENT OF FACTS

On March 24, 2022, Blanco was charged by information with one count of first degree sexual assault of a child in violation of Neb. Rev. Stat. § 28-319.01(1)(b) (Reissue 2016), a Class IB felony. The State also alleged that Blanco was a habitual criminal.

- 1 -

A jury trial was held on January 30, 2023. The jury heard testimony from L.M., the alleged victim in the case, as well as L.M.'s mother, L.M.'s cousin, and members of law enforcement.

L.M. testified that on the evening of August 12, 2021, when L.M. was 14 years old, she was home with her mother and her mother's boyfriend, Blanco. The three were watching a movie together in the living room, located on the home's first floor.

At some point in the evening, Blanco suggested that L.M. smoke marijuana with him. Blanco gave L.M. a joint and a dab pen (a portable vaporizer designed for consuming cannabis concentrates) while he and L.M. were in the living room and L.M.'s mother was in another room of the home. L.M. shared the joint with Blanco and took multiple pulls from the dab pen. Blanco had never before offered L.M. any drugs and this was her first time consuming marijuana. L.M. became high and began to feel lightheaded and slow moving.

In the early morning hours of August 13, 2021, L.M.'s mother went upstairs to go to sleep in her bedroom and L.M. stayed downstairs with Blanco for another 30 minutes. L.M. began to feel ill and Blanco helped L.M. up the stairs of the home. According to L.M., Blanco followed L.M. into her bedroom, roughly 8 feet from the mother's bedroom, and laid down on the bed with L.M. Blanco then proceeded to kiss L.M. on the mouth, touch her breasts with his hands and mouth, and digitally penetrate her vagina.

L.M. testified that she was in shock and did not say anything as Blanco was assaulting her. On cross-examination, L.M. stated that she told Blanco to stop at some point during the assault. L.M. also attributed her lack of resistance to the fact that she was high from marijuana use at the time of the assault. L.M. estimated that Blanco was in her bedroom for 15 to 30 minutes.

Blanco left L.M.'s bedroom at approximately 5:45 a.m. to leave for work. As Blanco was exiting L.M.'s bedroom he stated that he was going to "take his time on [L.M.] . . ." L.M.'s mother entered her bedroom after Blanco left and "asked if I was okay, or if anything happened, and then I said no, and then proceeded to go to sleep. That's when my mom went back to her room, but I think she knew." L.M. conceded that she had lied to her mother in response to her mother's questions. L.M. did not tell her mother about the assault because she was embarrassed and "didn't want to see her [mother] or get hurt." After the sexual assault, L.M. described her mood as "really weird," noting that she was very sad, did not feel like herself, and was experiencing physical tics.

L.M. then went to her grandmother's home and they went shopping. L.M. later texted and made a FaceTime video call to her cousin and disclosed the assault to her. Because her cousin was the person whom L.M. most trusted, she recalled sharing all of the details of the assault with her cousin. L.M. testified that she told her cousin about Blanco sexually assaulting her the same day as the assault. However, on cross-examination L.M. was asked the date on which she made her statements to her cousin, to which she replied "[m]aybe the 14th" and agreed that August 14 would have been the day after the assault.

L.M. also named two other friends she had told about the assault. L.M. also told Blanco's son that his father had assaulted her, although she did not go into details of the assault with him.

L.M.'s cousin testified that on August 13, 2021, "around 8 or 9:30", the cousin received a text message from L.M. saying that L.M. needed to tell her something. L.M. then initiated a FaceTime video call with her, which allowed the cousin to see L.M.'s face. L.M. was very anxious and was twitching so much that L.M. was barely able to speak. L.M. also looked like she was about to cry.

The State then asked the cousin about the contents of L.M.'s FaceTime call to the cousin, to which Blanco made a hearsay objection. The district court recessed the jury from the courtroom and the State again asked the cousin what L.M. said to her on the FaceTime call. The cousin testified that it took L.M. awhile to tell the cousin, but that eventually L.M. stated that the night prior, Blanco had digitally penetrated her vagina, groped her buttocks, and fondled her breasts. The State argued that L.M.'s statement to the cousin fell under the excited utterance exception to the hearsay prohibition because L.M.'s statement happened shortly after the event and L.M. was still under the stress of the event from what the cousin was able to observe on the FaceTime call. The court overruled Blanco's hearsay objection, finding that L.M.'s statement was an excited utterance. The jury then returned to the courtroom where the cousin repeated her testimony regarding the contents of the FaceTime call.

The cousin was concerned that L.M. would not disclose the assault to her mother so the cousin called the mother on the morning of August 14, 2021, to relay L.M.'s disclosure to her.

L.M.'s mother testified that she first dated Blanco when the two were teenagers and that they had reconnected in November 2020. On the evening of August 12, 2021, she, L.M., and Blanco were on the couch in her home's living room, watching television, listening to music, and talking. The mother had not observed any drug use in the home and denied that any alcohol or drugs were consumed that evening.

The mother went upstairs to her bedroom around 3 a.m. on August 13, 2021, and when her alarm clock rang 3 hours later, she went downstairs to find Blanco. As the mother went downstairs, she noticed that L.M.'s bedroom door was closed, which was unusual, as L.M. always kept it ajar. The mother searched the main floor for Blanco before going back upstairs and seeing Blanco exit L.M.'s bedroom. The mother confronted Blanco about why he was coming out of L.M.'s bedroom and he responded that he went in to lay L.M. down. The mother entered L.M.'s bedroom to ask L.M. if she was okay and L.M. was "twitching a little bit and said, yeah, but, but, but, but . . ."

L.M. left a few hours later to go shopping with her grandmother. The mother later received a phone call from L.M.'s cousin where the cousin relayed that L.M. had disclosed to the cousin that Blanco had touched L.M. inappropriately. The cousin told the mother that she was unsure if L.M. was going to tell the mother and so the cousin felt the need to inform her. After L.M. returned from her shopping trip, she asked her mother to go for a car ride where she then described the assault to her mother in detail. The mother called her probation officer at the time to report the assault.

The mother's former probation officer testified that in August 2021 he received a call from the mother who was upset and described an incident that had occurred over the weekend. The probation officer is a mandatory reporter, and he reported the incident to the Nebraska Child Abuse and Neglect Hotline the same day.

Joe Rohrer, a detective with the Scottsbluff Police Department, became involved with the case on August 18, 2021, after receiving a referral from the Hotline. Rohrer scheduled a forensic interview for L.M., which he was present for and observed. In her forensic interview, L.M. named Blanco as the man who had assaulted her, but Rohrer did not testify regarding whether L.M. described the assault in her forensic interview. Rohrer also made contact with L.M.'s cousin and the two other friends to whom L.M. had disclosed the assault, though Rohrer did not interview Blanco's son. Blanco was subsequently arrested.

After 1 hour of deliberation, the jury found Blanco guilty of first degree sexual assault of a child. The district court accepted the verdict of the jury and ordered a presentence investigation report.

Blanco's sentencing hearing was held on March 27, 2023. The State informed the district court that it would not be presenting evidence to support a habitual criminal enhancement, considering that first degree sexual assault of a child is a IB felony which carries a mandatory minimum of 15 years' imprisonment. The court then sentenced Blanco to a term of 40 to 60 years' imprisonment. Blanco received credit for 386 days served.

Blanco appeals.

## ASSIGNMENTS OF ERROR

Blanco assigns that (1) the district court erred in admitting hearsay statements made by L.M. to her cousin under the excited utterance exception; and (2) the district court's admission of hearsay evidence was not harmless error.

## STANDARD OF REVIEW

When the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, an appellate court reviews the admissibility of evidence for an abuse of discretion. *State v. Childs*, 309 Neb. 427, 960 N.W.2d 585 (2021). Apart from rulings under the residual hearsay exception, an appellate court reviews for clear error the factual findings underpinning a trial court's hearsay ruling and reviews de novo the court's ultimate determination to admit evidence over a hearsay objection or exclude evidence on hearsay grounds. *Id*.

## ANALYSIS

*Excited Utterance Exception.*

Blanco first assigns that the district court erred in admitting hearsay statements made by L.M. to her cousin during a FaceTime call. The district court overruled Blanco's hearsay objection to the cousin's testimony that L.M. had disclosed over FaceTime that Blanco digitally penetrated her vagina, groped her buttocks, and fondled her breasts, finding that L.M.'s statements were excited utterances. Blanco argues that L.M.'s statements to her cousin were not excited utterances because they occurred well after the alleged assault, were not spontaneous, and contradicted a prior statement L.M. had made to her mother.

Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Neb. Rev. Stat. § 27-801 (Cum. Supp. 2020). Hearsay is not admissible except as provided by the Nebraska Evidence Rules, other rules adopted by the statutes of the State of Nebraska, or by the discovery rules of the Nebraska Supreme Court. See Neb. Rev. Stat. § 27-802 (Reissue 2016). There is an exception to the hearsay rule when the statement offered was related to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition. See Neb. Rev. Stat. § 27-803(1) (Reissue 2016).

For a statement to qualify as an excited utterance, the following criteria must be established: (1) There must have been a startling event, (2) the statement must relate to the event, and (3) the statement must have been made by the declarant under the stress of the event. *State v.*

*Nolt*, 298 Neb. 910, 906 N.W.2d 309 (2018). Here, the first two elements of the exception are met in that L.M. experienced a startling event, being sexually assaulted, and her statements to the cousin related to the event. Thus, the issue is whether the statements were made while under the stress of the event.

The key requirement to the excited utterance exception is spontaneity, which requires a showing that the statements were made without time for conscious reflection. *State v. Nolt, supra*. An excited utterance does not have to be contemporaneous with the exciting event. It may be subsequent to the event if there was not time for the exciting influence to lose its sway. The true test is not when the exclamation was made but whether, under all the circumstances, the declarant was still speaking under the stress of nervous excitement and shock caused by the event. *Id*. Facts relevant to whether a statement is an excited utterance include the declarant's manifestation of stress, the declarant's physical condition, and whether the declarant spoke in response to questioning. *Id*.

Blanco asserts that L.M. did not call her cousin until the day after the alleged assault, which gave L.M. sufficient time to consciously reflect on her statement. L.M. testified that she called her cousin the same day of the sexual assault, which would have been August 13. When L.M. was asked on cross examination of the date she called her cousin, L.M. stated that it was maybe August 14. The cousin testified consistently that L.M. placed a FaceTime call to her on August 13. The cousin also testified that the call occurred between 8 and 9:30, but did not specify whether it was morning or evening. Based upon all of the testimony, and given that the assault occurred in the late evening or early morning hours, the record supports a finding that the conversation between L.M. and her cousin occurred on August 13. And while at least a few hours had passed between the sexual assault and L.M.'s statements to her cousin, the time between when the event occurs and the statements are made is not "of itself dispositive of the spontaneity issue." See *State v. Castillo-Zamora*, 289 Neb. 382, 855 N.W.2d 14 (2014) (quoting *State v. Boppre*, 243 Neb. 908, 927, 503 N.W.2d 526, 538 (1993). The length of time for the exception to apply depends on the facts of the case. See *State v. Castillo-Zamora, supra*.

The record indicates that the statements were made while L.M. was still experiencing the effects of this startling event. Both L.M. and her mother testified that L.M. was suffering from physical tics and twitching immediately after the sexual assault occurred. The cousin testified that a few hours later over the FaceTime call, she observed L.M. to be twitching. The cousin also observed that L.M. looked as though she was about to cry and struggled to speak. While not necessary, a showing that the declarant is visibly excited is relevant to the third prong of the excited utterance test. See *State v. Castillo-Zamora, supra*. Further, Nebraska appellate courts have found it to be particularly persuasive evidence that a declarant was still under the stress of the event when she was visibly upset at the time of the statement. See *State v. Pullens*, 281 Neb. 828, 800 N.W.2d 202 (2011).

Blanco also argues that L.M.'s claim that she lied to her mother by saying that nothing had happened with Blanco immediately after the sexual assault frustrates the justification of the excited utterance exception. In other words, L.M.'s decision to lie to her mother in order to protect her indicates a purposeful choice after conscious reflection. Blanco is correct that the justification for the excited utterance exception to the hearsay rule is that circumstances may produce a condition of excitement which temporarily stills the capacity for reflection and produces utterances free of

conscious fabrication. See *State v. Roebuck*, 31 Neb. App. 67, 976 N.W.2d 218 (2022). However, a declarant's prior inconsistent statement does not necessarily prohibit the application of the exception. The evidence that L.M. was still visibly upset from the encounter with Blanco when she spoke to her cousin supports the inference that she was still under stress from the incident and that any statements made by her were spontaneous. Blanco's counsel was able to examine L.M.'s alleged inconsistent statements to her mother and argue that she later fabricated the incident. Further, the jury was able to consider the testimony of the cousin alongside the testimony of L.M. The credibility and weight of witness testimony are for the jury to determine, and witness credibility is not to be reassessed on appellate review. See *State v. Tucker*, 301 Neb. 856, 920 N.W.2d 680 (2018).

We conclude that the statements made by L.M. to her cousin were excited utterances as per § 27-803(1). The district court did not err in admitting the cousin's testimony.

*Harmless Error.*

Blanco also assigns that the district court's admission of the hearsay evidence was not harmless error because but for the cousin's testimony bolstering the testimony of the other witnesses, the jury would not have had any evidence to render a guilty verdict beyond a reasonable doubt.

However, because we determined above that the district court did not err in finding the elements of the excited utterance exception had been met and allowing the cousin to testify to L.M.'s hearsay statements, we need not address this assignment of error. An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it. *State v. Brennauer*, 314 Neb. 782, 993 N.W.2d 305 (2023).

CONCLUSION

The district court did not err in admitting L.M.'s cousin's testimony under the excited utterance exception to the hearsay rule. We thus affirm Blanco's conviction and sentence.

AFFIRMED.